**UNITED STATES of America, Appellee,**

v.

**Jimmy BARRIOS–MORIERA, Appellant.**

**No. 718, Docket 88–1291.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1989.
Decided March 30, 1989.

Margaret E. Alverson, New York City (Aranda & Guttlein, of counsel) for appellant.

Peter Sheridan, Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., John Gleeson, Asst. U.S. Atty., of counsel) for appellee.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

When a police officer seizes a wrapped article that later turns out to be contraband, the defendant invariably argues that only after seeing the item unwrapped did the officer have probable cause to believe it was of a criminal nature, though his testimony at the suppression hearing is to the contrary. We examine that close question on this appeal by Jimmy Barrios–Moriera from a June 24, 1988 judgment of conviction in the United States District Court for the Eastern District of New York (Dearie, J.), convicting him of possession of more than 500 grams of cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) (1982 & Supp. IV 1986).

## FACTS

On the afternoon of July 22, 1987 three officers—Special Drug Enforcement Administration (DEA) Agent Dolinsky, Detective Healy and Sergeant Pena, the latter two of the New York City Police Department—were surveilling a parked black Audi automobile in the College Point area of Queens in connection with a recent drug-related homicide. At the suppression hearing, the DEA agent testified that he observed a blue Cadillac drive up 25th Road and make a left onto 123rd Street and drive past the black Audi parked on the right hand side of 123rd Street. Dolinsky then stated that the Cadillac "slowed down by the Audi, almost came to a stop and it appeared to me that the ... [driver of the Cadillac] looked at the Audi for a few seconds."

Agent Dolinsky then radioed officers Healy and Pena, related to them what he had observed, and that he intended to follow the Cadillac, which he did for five blocks until it stopped and parked on 120th Street across the street from an apartment building. While trailing the Cadillac, Dolinsky checked its license plate number and learned that appellant was the owner. He too parked on 120th Street, and watched Barrios get out, go to the trunk, and take out a large shopping bag with white handles. The agent decided to follow to "see where he was going with the bag," and relayed this intention to Healy and Pena, who were now parked behind him.

Losing sight of Barrios as he entered the apartment complex, Dolinsky picked up his pace—almost jogging—because he knew that the door of the apartment building would automatically lock when it closed. Catching the door just in time, the agent observed Barrios halfway up a flight of stairs in a common hallway. Dolinsky identified himself as a policeman, and told Barrios that he wanted to speak with him. But appellant continued up the stairs until he reached the door to his apartment, where he took out his keys and began to fumble with the lock, placing the shopping bag on the floor beside him.

When Dolinsky reached the top of the stairs, and was a step or two away from Barrios, he testified that he "glanced down to the bag" and "observed a rectangular object wrapped in tape." He thought that the wrapping was duct tape, and described the dimensions of the package—"approxi-

mately eight inches—eight inches in length by maybe four inches—four or five inches wide and four inches deep." On the basis of his four years as a DEA Special Agent and the hundreds of kilograms of cocaine he had seized while working with the New York City Drug Enforcement Task Force, Dolinsky concluded that the package was cocaine. He stated that "when they are packaged in a kilo form, they are usually wrapped in a masking tape, duct tape [or] contact paper type tape." Thus, he was "fairly confident it was a kilo of cocaine."

The agent thereupon picked up the bag, reached in and took the rectangular package in his hand, and told Barrios to go into his apartment. Dolinsky and Detective Healy—who now joined them—followed. Once inside, the officers encountered one Valderrama, whom Barrios described as a friend. Barrios consented to Healy's brief security check of the apartment. Dolinsky then informed Barrios of his rights and placed him under arrest. Later, appellant consented in writing to a full search, which unearthed two beepers.

On January 22, 1988 a suppression hearing was held before Judge Dearie in which appellant sought to demonstrate that the cocaine was unconstitutionally seized, or that it was tainted by Dolinsky's allegedly unlawful entry into Barrios' building. After hearing testimony from Dolinsky, Healy, Valderrama and Barrios, the district court denied the motion. At trial, appellant was convicted of cocaine possession with intent to distribute. This appeal raises two issues, both related to the denial of the suppression motion, and only one of which requires extended discussion.

## DISCUSSION

■ To support his claim that it was clearly erroneous for the district court to find the testimony of Special Agent Dolinsky and Detective Healy credible, Barrios cites cases in which officers Dolinsky and Healy have testified, and focuses on one case in which there was an adverse credibility determination concerning Agent Dolinsky. This claim is readily disposed of because after reading the transcript of the

suppression hearing, we cannot say that Judge Dearie's finding of credibility leaves us "with a definite and firm conviction that a mistake has been committed." *United States v. Rios*, 856 F.2d 493, 495 (2d Cir. 1988).

*Barrios' Fourth Amendment Claims*
A. *Entry and Seizure*

■ Barrios' Fourth Amendment claims require a more detailed analysis. He asserts, first, that his motion to suppress the seized cocaine was improperly denied because Dolinsky's entry into his apartment building was unlawful. Barrios argues that the entry violated his reasonable expectation of privacy since Dolinsky penetrated an outer door that the agent knew would lock, and that he had a reasonable and legitimate expectation of privacy not merely in his apartment, but also in the common hallway of his multi-dwelling apartment complex.

The test to determine whether a person can claim Fourth Amendment protection in a given place depends upon whether the person has a legitimate subjective expectation of privacy in that area that society is prepared to accept as objectively reasonable. *See California v. Greenwood*, 486 U.S. 1, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988) (holding that there is no legitimate, subjective expectation of privacy in garbage put into plastic bags and placed out on the curb); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The intrusion here was not into appellant's home, where—absent a warrant issued upon probable cause or exigent circumstances—such an intrusion is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). Here the police entry was into a common hallway, an area where there is no legitimate expectation of privacy. Thus, a warrantless arrest is permissible even though the area was guarded by a locked door. *See United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *United States v. Holland*, 755 F.2d 253, 255–56 (2d Cir.)

(collecting cases), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); *United States v. Martinez–Gonzalez,* 686 F.2d 93, 101–02 (2d Cir.1982). Hence, the expectation of privacy claim must fail.

█ Appellant next argues that he was unlawfully seized when he was "stopped" at the top of the stairs. Barrios contends that this encounter was a seizure within the Fourth Amendment because officers Dolinsky and Healy obviously intended to stop and question him. Concededly, the officers wanted to talk with Barrios about the drug-related homicide that they were investigating, particularly in light of the fact that their primary suspect drove the same black Audi in which Barrios had shown interest.

The Supreme Court has noted that law enforcement officers do not violate the Fourth Amendment merely by approaching a person in a public place and asking questions. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (plurality); *id.* at 523 n. 3, 103 S.Ct. at 1338 n. 3 (Rehnquist, J. dissenting) (but concurring in this basic proposition). The test of whether interaction between police and a citizen constitutes a seizure is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). For a mere encounter to be considered a seizure, a substantial showing of force or authority is required. *See id.; see also I.N.S. v. Delgado,* 466 U.S. 210, 215–16, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984) (holding that unless the encounter is so intimidating that a reasonable person would think he was not free to leave without answering the agent's questions, there is no detention under the Fourth Amendment).

Barrios urges that the totality of the circumstances—Dolinsky's pursuit, his calling out "police", and his request that appellant stop and speak with him—indicates an intent to detain Barrios on only a generalized suspicion. We disagree. No seizure occurred until after Dolinsky viewed the

rectangular package; this, in turn, provided the evidentiary justification for detaining Barrios. Moreover, the encounter possessed none of the indicia of force or authority that typically earmarks a Fourth Amendment seizure, such as displaying a firearm, touching the individual, or a tone of voice or language indicating that compliance with an officer's request is required. *Compare Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877 (holding that approach and request for identification of person by DEA agents in airport concourse not a seizure), *with Florida v. Royer,* 460 U.S. at 502–04 & n. 9, 103 S.Ct. at 1326–28 & n. 9 (stating that retention of luggage, airline ticket and driver's license, and removal of individual to small room by police detectives is a seizure of person under the Fourth Amendment). There was no such seizure in this case.

## B. *Plain View Doctrine*

### 1. *In General*

█ Appellant's final Fourth Amendment claim is that Dolinsky's warrantless seizure of the rectangular package from the white shopping bag was unlawful because it was not justified under the "plain view doctrine." The general rule, of course, is that searches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. at 357, 88 S.Ct. at 514). One such well-delineated exception is the plain view doctrine, under which a warrantless seizure of an item in plain view is permitted in limited circumstances. *See Arizona v. Hicks,* 480 U.S. 321, 326–28, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987); *Texas v. Brown,* 460 U.S. 730, 736–39, 103 S.Ct. 1535, 1540–42, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 464–72, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971). To seize an item on the theory that it is located in plain view, three conditions

must be met. First, the initial intrusion by the police officer must be lawful so that he can justify being in a position to make his discovery. *Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038. Second, the discovery must be inadvertent. *Id.* at 466, 91 S.Ct. at 2038. Third, the police must have had probable cause to believe that the item seized was evidence of a crime. *See Arizona v. Hicks*, 480 U.S. at 326, 107 S.Ct. at 1153; *United States v. $10,000 in United States Currency*, 780 F.2d 213, 219–20 (2d Cir.1986). Put another way, it must have been "immediately apparent" to the officer before seizing the item, not after seizing it, that it was of a criminal character, *Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038. This limitation is essential because the proverb "the proof of the pudding is in the eating" has no application to Fourth Amendment law. *See United States v. Paulino*, 850 F.2d 93, 98 (2d Cir.1988).

The plain view doctrine extends to non-public places the same authority the police have to make warrantless seizures in public places. *See Arizona v. Hicks*, 480 U.S. at 326–27, 107 S.Ct. at 1153–54; *Payton v. New York*, 445 U.S. at 584–90, 100 S.Ct. at 1379–82 (finding a warrantless intrusion into the home unreasonable absent exigent circumstances); *United States v. Watson*, 423 U.S. 411, 421–23, 96 S.Ct. 820, 826–28, 46 L.Ed.2d 598 (1976) (permitting warrantless "midday, public arrest" of felony suspect so long as supported by probable cause). Thus, the three prerequisites of the doctrine—lawful entry, inadvertent discovery, and probable cause—are functional substitutes for the requirements of a warrant issued by a neutral magistrate based upon a showing of probable cause and particularly describing the items to be seized. *See United States v. $10,000 in United States Currency*, 780 F.2d at 216–18.

### 2. Applied to Instant Case

■ The lawfulness of the initial intrusion is the linchpin of the plain view doctrine. As the Supreme Court has observed, "[t]he question whether property in plain view of the police may be seized ... must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question." *Texas v. Brown*, 460 U.S. at 737, 103 S.Ct. at 1541. As already noted, Agent Dolinsky was lawfully on the premises in a common hallway where Barrios had no reasonable expectation of privacy. Hence, the officer's presence outside Barrios' apartment was justifiable and satisfies the first element of the doctrine. *See Washington v. Chrisman*, 455 U.S. 1, 8–9, 102 S.Ct. 812, 817–18, 70 L.Ed.2d 778 (1982) (discussing first element of plain view doctrine).

The second requirement—that the viewing of the item must be inadvertent—is to be read "neither to allow a premeditated seizure, nor to prevent effective police work." *United States v. $10,000 in United States Currency*, 780 F.2d at 218; *see also Coolidge*, 403 U.S. at 467–68, 91 S.Ct. at 645–46. The specific evil against which the Fourth Amendment was directed was the "general warrant," which had permitted unrestrained rummaging through a person's belongings. The inadvertence requirement—like a warrant's particularity requirement—ensures that no impermissible exploration occurs. At the suppression hearing Agent Dolinsky testified that he had "glanced down to the [shopping] bag," that Barrios had placed on the floor. Because the bag was wide open he had an unimpeded view of its contents. This does not suggest any unlawful rummaging—indeed, Dolinsky's viewing was fortuitous—therefore Dolinsky's viewing was inadvertent.

■ We now turn to the final limitation which requires that the officer have probable cause to believe that the item seized was of a criminal nature and constituted evidence of a crime. *Arizona v. Hicks*, 480 U.S. at 326, 107 S.Ct. at 1153; *Texas v. Brown*, 460 U.S. at 741–42, 103 S.Ct. at 1542–43. Of the three plain view conditions this is the only one that presents a close question in this appeal. Probable cause is a flexible, common sense standard that "merely requires that the facts available to the officers would 'warrant a man of reasonable caution in the belief' that certain items may be contraband ... or useful as evidence of a crime; it does not

demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1543.

The Supreme Court recently considered this element in *Texas v. Brown.* There a police officer, while making a routine traffic stop at a fixed checkpoint, asked Brown for his license and, shining his flashlight into the car, saw Brown withdraw from his right-hand pocket an opaque balloon that was knotted about a half-inch from the tip. Brown dropped the balloon on the floor and reached into the glove compartment. Already alarmed by the balloon, the officer shifted position, looked into the glove compartment and noticed that it contained "several small plastic vials, quantities of loose white powder and an open bag of party balloons." 460 U.S. at 734, 103 S.Ct. at 1539. The officer reached in and seized the balloon; it was later found to contain heroin. *See id.*

In upholding this seizure under the plain view doctrine, the Supreme Court observed that the evidentiary significance of an item viewed must be assessed from the perspective of a law enforcement officer. *See id.* Near certainty of the article's criminal character is not necessary. The matrix of facts and circumstances, including the experience and judgment of the police officer, must be weighed in determining whether the item is contraband. *See id.* at 742–43, 103 S.Ct. at 1543–44. In *Texas v. Brown* "the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." *Id.* at 743, 103 S.Ct. at 1544. The contents of the glove compartment revealed further suggestions that the balloon contained contraband and that criminal activity was afoot.

In the present case we think Agent Dolinsky had probable cause to believe that the rectangular package he saw in the open white bag contained contraband. He testified that for three and one-half years he had been working with the New York City Drug Enforcement Task Force and had participated in the seizure of three or four hundred separate kilos of cocaine. He observed that a kilogram of cocaine was typically wrapped in some variety of tape. In fact, Agent Dolinsky not only had probable cause to believe that the package contained cocaine; his plain view of it also told him its approximate quantity. Clearly, the rectangular package, measuring a certain size, wrapped in duct tape, "spoke volumes as to its contents," particularly to an experienced DEA agent. *See Texas v. Brown,* 460 U.S. at 743, 103 S.Ct. at 1544. If what an officer subsequently finds *after* seizing an item could provide the justification for his initial action, then the "proof of the pudding" view would hold full sway. We refuse to allow a seizure of contraband to provide a *post hoc* justification for unlawful police conduct. Instead, the language of the Fourth Amendment erects a parchment barrier behind which the right to be secure from unreasonable searches and seizures safely resides. Good, effective and lawful police work, as in the case at hand, reinforces that parchment barrier which the proof of the pudding theory seeks to shred.

We do not mean to suggest that the mere viewing and evaluation of the package alone constituted probable cause. It is well-settled that police officers are allowed to consider, in addition, the evidentiary value of the items seized in the context in which they were seized to determine whether they are probative of criminal activity. *See United States v. Escobar,* 805 F.2d 68, 72 (2d Cir.1986); *United States v. Panza,* 750 F.2d 1141, 1151–52 (2d Cir. 1984); *United States v. Callabrass,* 607 F.2d 559, 564 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980); *United States v. Ochs,* 595 F.2d 1247, 1257 n. 8 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). This is consistent with judicial notions of probable cause for the issuance of a warrant. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 230–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983) (in considering whether probable cause exists to support issuance of a warrant, the magistrate may consider the totality of the circumstances).

The circumstances preceding the officer's ultimate face-to-face encounter with

**18**

Barrios and his viewing of the duct tape wrapped package support a rising tide of suspicion. Dolinsky and his fellow officers witnessed appellant evince an interest in the Audi automobile they were surveilling in connection with a *drug*-related homicide. The agent saw Barrios remove a large shopping bag from the trunk of his automobile, and when asked to stop by Dolinsky Barrios boldly continued up to his apartment. Thus, by the time he had arrived at the top of the stairs, glanced into the open bag, and saw the package, this experienced DEA officer had probable cause to believe that it contained contraband. Consequently, the third condition required to seize an object under the plain view doctrine was satisfied.

### CONCLUSION

Accordingly, the district court correctly denied Barrios' motion to suppress the kilogram of cocaine because it was discovered by the police while in plain view. The judgment of conviction appealed from is therefore affirmed.

PIERCE, Circuit Judge, dissents in separate opinion.

PIERCE, Circuit Judge, dissenting:

I dissent from the conclusion that the confluence of earlier events and the substantial experience of the federal agent warranted his "plain view" seizure of the duct-tape-wrapped rectangular package in appellant's open shopping bag.

Given the volume of crime and drug trafficking which occurs in metropolitan areas daily, by the court's holding today, citizens who reside in such areas will be rendered subject to stops and seizures as occurred herein, merely for pausing momentarily alongside the "wrong" automobile, failing to close the top of one's shopping bag, carrying therein a brick-size package wrapped in hardware-store duct tape, and happening to continue on one's way when a law enforcement officer calls to one to stop.

Importantly, in the "balloon case," *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75

L.Ed.2d 502 (1983), the Supreme Court, in upholding a seizure, noted that the police officer looked in the glove compartment and saw *"several small plastic vials, quantities of loose white powder,* and an open bag of party balloons." *Id.* at 734, 103 S.Ct. at 1539 (emphasis added). Herein, the agent simply saw a package wrapped in duct tape, which he testified in his experience is commonly used to wrap kilogram packages of cocaine. I agree with the majority that the mere viewing and evaluation of the package alone did not constitute probable cause. However, unlike the majority, I do not believe that appellant's pausing before the Audi automobile and his failing to stop in response to the agent's call while walking upstairs to his apartment added enough to the probable cause calculus to justify the search and seizure.

I would reverse on the ground that the suppression motion should have been granted.