UNITED STATES of America,

v.

Michael PETTIFORD, Defendant.

No. CR. 03–006(RJL).

United States District Court,
District of Columbia.

July 8, 2003.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

The defendant has moved to suppress evidence seized from his car on December 3, 2003. Upon consideration of the motions, the opposition thereto, the evidence presented at the hearing, and for the following reasons, the Court denies the defendant's motions to suppress the evidence.

### I. Background

The essential facts relating to the search in this case were testified to by Officer Ronald Royster of the Metropolitan Police Department ("MPD") at a suppression hearing and were corroborated, to a large extent, by the testimony of MPD Officer Lynette Naylor at the preliminary and detention hearing: At 6:15 pm on the evening of December 3, 2003, Officer Royster, Officer Naylor, and approximately ten other members of the 6th District Focus Mission Team were investigating long-standing complaints of narcotic activity at the 200 block of 55th Street when Officer Naylor pulled up to a Honda Accord parked in that same block. She noticed through her cruiser window a red light of some kind lit up on the dashboard of the car. Upon exiting the cruiser, she heard the vehicle's engine running and she determined that the car was unattended, locked, and had a puppy inside whining. In addition, while looking inside the car Officer Naylor observed the butt of a gun protruding from a red hat on the driver's side of the floorboard and so indicated in her PD–163 report. Thereafter Officer Naylor summoned Officer Royster over to the car. Officer Royster looked through the front windshield into the car where he too saw a

gun inside of the red hat. His recollection, however, differed from Officer Naylor's because he recalled seeing the barrel of the gun, rather than its butt, protruding from the hat, and he recalled the hat being on the passenger side of the floorboard.

After the officers unsuccessfully attempted to open the car doors, and while they were awaiting a registration check on the car, the defendant pulled up along side the officers in another car. In the passenger seat next to the defendant was his friend Trenice Jett. The defendant asked the officer if there was any problem with his "friend's car." At which point, the officers told him to tell his friend to come get his car because you cannot leave a car running unattended in the District. The defendant, in response, admitted that the unattended running car was his. In addition, he pointed out that the car's registration and his license were inside the car. When asked thereafter by the officers if he had a key to open the locked door, Ms. Jett produced a remote key device that was used to unlock the doors. Whether or not the defendant had passed the remote to Ms. Jett or whether she already had it in her possession is contested. It is additionally contested whether Ms. Jett used the remote herself to unlock the doors, or the officers used the remote to open the doors. Either way, however, the doors were opened, the ignition was turned off, and certain items inside were seized. In particular, the officers recovered a .380 caliber handgun and $1,031 in currency inside the red hat, a cigarette pack lying on the passenger seat which contained 28.7 grams of cocaine base in rock form, and $901 of currency in the glove box.

The defendant has been charged with three counts: (1) unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1); (2) unlawful possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iiii); and (3) carrying and possessing a firearm during a drug trafficking offense under 18 U.S.C. § 924(c)(1). The defendant filed a motion to suppress the evidence obtained from the car. The Court heard testimony from Officer Royster, the defendant, and Trenice Jett at an evidentiary hearing held on the suppression motion on May 16, 2003.[1]

## II. Discussion

The defendant contends that the illegal gun and drugs found in his car should be suppressed because the search did not meet any of the exceptions to the Fourth Amendment's warrant requirement. The government responds that the gun was discovered in plain view inside the defendant's car and, in any event, that consent was given to have the car searched. For the following reasons, the Court agrees that the evidence should not be suppressed because the gun was discovered in plain view. Accordingly, the Court need not address the issue of whether consent had been given to search the car.[2]

The plain view doctrine is a well-established exception to the Fourth Amendment's warrant requirement. *Horton v. California*, 496 U.S. 128, 134, 110

---

1. Officer Naylor was not available to testify at the suppression hearing but her earlier testimony at the preliminary and detention hearing was subjected to cross-examination.

2. The defendant's principal focus during the evidentiary hearing was the lack of authorization by the defendant to search his car. Both Ms. Jett and the defendant denied giving permission to open the car doors. They claimed the officers used the remote key to open the doors. Officer Royster, by comparison, testified that Ms. Jett had pressed the button on the remote key and thereby unlocked the doors.

S.Ct. 2301, 110 L.Ed.2d 112 (1990). If contraband is in an officer's plain view, then the officer can seize it without a warrant so long as: (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," *Horton*, 496 U.S. at 136, 110 S.Ct. 2301; (2) the "incriminating character of the evidence [is] 'immediately apparent,'" *id.* at 137, 110 S.Ct. 2301 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); and (3) the officer has "a lawful right of access to the object itself," *id.* At issue here is the first requirement that the officers must have lawfully been in a position from which they could plainly have seen the contraband. In *Texas v. Brown*, the Supreme Court held that the scope of an officer's plain view is the same as that of an "inquisitive passerby" or "diligent police officer[ ]." 460 U.S. 730, 740, 103 S.Ct. 1535 (1983).[3]

■ Like an inquisitive passerby, the officers in this case were attracted to peer into the parked car, *Brown*, 460 U.S. at 733, 103 S.Ct. 1535, because it had been left running, with a whining dog inside, on a public street where the defendant had little expectation of privacy. *See United States v. Barrios–Moriera*, 872 F.2d 12, 12 (2nd Cir.1989) (finding that an officer was lawfully in a public place, an apartment building hallway, in which the defendant has no expectation of privacy); *South Dakota v. Opperman*, 428 U.S. 364, 367–68,

96 S.Ct. 3092, 49 L.Ed.2d 1000 ("One has lesser expectation of privacy in a motor vehicle because its function is transportation ... it travels through public thoroughfares where both its occupants and its contents are in plain view."). Moreover, the officers clearly had "prior justification" for looking through the front windshield of the running car, *Brown*, 460 U.S. at 739, 103 S.Ct. 1535, because they were trying to determine if the running car was unattended, which is a violation of D.C. Municipal Regulations. D.C. Mun. Regs. tit. 18 § 2418.1 (1999) ("No persons driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine."). Since the side windows of the defendant's car were heavily tinted, Officers Naylor and Royster had no choice but to look inside the front windshield to determine if anyone was inside.[4] Upon doing so, Officer Naylor and Officer Royster determined that the car was unattended, there was a dog inside, and there was a weapon inside a red hat in plain view on the floorboard. If the car had not been locked, or if Officer Naylor and/or Officer Royster had had the necessary tools to open it, either would have undoubtedly noticed the gun in the hat when they properly entered the parked car to turn off the running engine. When the defendant approached Officer Naylor minutes later and pretended initially that the parked car was his "friend's car", only to reverse himself moments later and admit that his driver's license and registration were in the parked

---

**3.** The officer in *Brown* had stopped the defendant at a routine driver's license checkpoint, and, while standing along side the driver's window, used his flashlight to peer into the car. 460 U.S. at 733, 103 S.Ct. 1535. Having caught a glimpse of what he believed to be illegal drugs, he then "shifted his position in order to obtain a better view of the interior." *Id.* at 734, 103 S.Ct. 1535. The Supreme Court found that because "the public could peer into the interior of the [the defendant's] automobile from any number of angles[,]

there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Id.* at 740, 103 S.Ct. 1535.

**4.** Notwithstanding the defendant's suggestion that the visibility looking through the windshield was limited, Ms. Jett herself conceded, "I'm pretty sure it's possible to look in any windshield of a car . . . ." Tr. at 95,

car, the officers had a more than sufficient legal basis to use the key to open the car, turn off the engine, seize the weapon in plain view and search the car's cabin for other contraband.

### III. Order

For the above-stated reasons, it is hereby

**ORDERED** that defendant's motion to suppress evidence [# 3] is DENIED;

**SO ORDERED.**