**UNITED STATES OF AMERICA,**

v.

**Yaro BARNES, Defendant.**

No. 05–CR–54A.

United States District Court,
W.D. New York.

Oct. 31, 2005.

Richard P. Maigret, U.S. Attorney's Office, Buffalo, NY, for United States of America.

## DECISION AND ORDER

ARCARA, Chief Judge.

### INTRODUCTION

The defendant, Yaro Barnes, is charged in a one-count indictment with violating 18 U.S.C. § 922(g)(1) and § 924(a)(2), that is, being a prior felon in possession of a firearm and ammunition. The matter was referred to Magistrate Judge Leslie G. Foschio for pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1).

On May 31, 2005, the defendant filed a motion to suppress evidence seized from his residence during a search conducted pursuant to a warrant issued by Buffalo City Court Judge Debra Givens. On June 23, 2005, the government filed a response in opposition to the motion to suppress. Pursuant to Magistrate Judge Foschio's request, the defendant filed a supplemental memorandum on July 7, 2005, and the government filed a supplemental response on July 15, 2005. On August 10, 2005, Magistrate Judge Foschio issued a report and recommendation ("Report and Recommendation") recommending that the motion to suppress be denied in all respects.

On September 6, 2005, the defendant filed objections to the Magistrate Judge's Report and Recommendation. On September 21, 2005, the government filed a response. Oral argument was held on October 5, 2005.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review, and after reviewing the submissions and hearing argument from the parties, the Court adopts Magistrate Judge Foschio's Report and Recommendation.

The defendant seeks to suppress a firearm and ammunition that was found in a milk box located in a common hallway of a duplex apartment building where the defendant resided. The duplex consisted of two apartments, an upper level apartment occupied by the defendant and his girlfriend, and a lower level apartment occupied by the defendant's uncle. Occupants of the two apartments shared a common hallway, where the gun was found. *See* Court Exh. 1, attached hereto (illustration of the layout of the common hallway where the gun was found).

The defendant objects to Magistrate Judge Foschio's conclusion that he had no expectation of privacy in the common hallway of the duplex apartment building.[1] The defendant also argues that "there is a higher expectation of privacy in a duplex." *See* Defendant's Objections, at 4.

■ The Court rejects that argument. The law in this Circuit is clear that individual tenants of multi-family dwellings do not have a legitimate expectation of priva-

cy in the common areas, even if those areas are guarded by locked doors. *See United States v. Barrios–Moriera,* 872 F.2d 12, 15 (2d Cir.1989), *reversed on other grounds by Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Holland,* 755 F.2d 253, 255 (2d Cir.), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985).

■ The Court also rejects the defendant's assertion that there exists a "heightened expectation of privacy" in the common hallway of a duplex apartment, as opposed to a large, multi-family apartment building. In *Holland,* the Second Circuit rejected a similar argument with respect to duplex apartment house, stating that:

we never have held that the common areas must be accessible to the public at large nor have we required a quantified amount of daily traffic through the area as a basis for determining that a common area is beyond an individual's protected zone of privacy.

*Holland,* 755 F.2d at 255. The Court reasoned that such a bright-line rule

gives tenants the benefit of much-needed police protection in common hallways . . . while it preserves for them the privacy of their actual places of abode, their apartments. It also lays down a clearly-defined boundary line for constitutionally permissible police action, which is readily apparent to an officer in the field, without a need for counting apartments, analyzing common-hallway traffic patterns or interpreting the mental processes of a suspect relating to an area used in common with others.

---

1. The Magistrate Judge also found that, to the extent that the milk box could only be opened from inside the lower apartment, the defendant lacks standing to contest the search. Defendant concedes that point. *See* Defen-

dant's Objections, at 3. However, the defendant argues that the milk box could be opened from the common hallway and that he had an expectation of privacy in that common area.

*Id.* (internal citations omitted). *See also United States v. McCaster*, 193 F.3d 930 (8th Cir.1999) (holding that the defendant did not have a legitimate expectation of privacy in the hall closet located within the common area of the duplex in which he resided); *United States v. Shaw*, 269 F.Supp.2d 90 (E.D.N.Y.2003) (holding that defendant lacked expectation of privacy in the laundry room adjacent to his basement apartment where laundry room was a common area shared by the defendant with his mother and grandfather).

### CONCLUSION

Accordingly, for the reasons set forth herein and in Magistrate Judge Foschio's Report and Recommendation, the defendant's motion to suppress evidence is denied.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on August 2, 2005, for pretrial matters, including report and recommendation on dispositive motions. The matter is presently before the court on Defendant's omnibus pretrial motion filed on May 31, 2005 (Doc. No. 13) seeking various relief, including the suppression of evidence.

### BACKGROUND

Defendant Yaro Barnes ("Defendant") was charged in a single count indictment ("Indictment"), dated February 15, 2005, with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Specifically, Defendant is charged with possession of a firearm and ammunition as a prior felon.

On May 31, 2005, Defendant filed a pretrial motion requesting, *inter alia,* suppression of physical evidence seized from Defendant's residence during a search conducted pursuant to a search warrant issued in connection with the underlying investigation. (Doc. No. 13). Attached to the motion is the Affirmation of Thomas J. Eoannou, Esq. ("Eoannou Affirmation"), and Defendant's Exhibits A and B ("Defendant's Exh. __"). On June 23, 2005, the Government filed the Government's Response to the Defendant's Motions (Doc. No. 15) ("Government's Response"), with attached exhibits ("Government's Exh. __"). The nondispositive discovery requests contained in Defendant's omnibus pretrial motion were resolved at oral argument on June 28, 2005 and the motion was withdrawn as to such requests with the court reserving decision on Defendant's suppression motion. *See* June 28, 2005 Minute Entry. The court also requested further memoranda of law regarding the admissibility of statements and whether the court was required to conduct a hearing pursuant to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) to determine the validity of the search warrant under the "good faith" exception to the warrant requirement.

On July 7, 2005, Defendant filed a further Memorandum of Law regarding the suppression issues pending before the court (Doc. No. 17) ("Defendant's Supplemental Memorandum").[1] The Government filed, on July 15, 2005, its Response to the Defendant's Supplemental Memorandum of Law (Doc. No. 18) ("Government's Supplemental Memorandum").

Based on the following, Defendant's motion to suppress evidence should be DENIED without a hearing.

### FACTS[2]

Defendant was convicted of felony crimes in Erie County Court in Buffalo, New York on September 16, 1994, and in New York Supreme Court in Buffalo, New York on January 11, 1996. On October 27, 2004, New York State Police Investigator Clint Calloway ("Investigator Calloway"), and an unidentified confidential informant appeared *in camera* before Buffalo City Court Judge Debra Givens ("Judge Givens"), seeking a search warrant for Defendant's residence, *i.e.,* the upper apartment of a duplex located at 94 Box Street, Buffalo, New York. According to the affidavit of Investigator Calloway submitted in support of the search warrant ("Investigator Calloway's Affidavit"), ten days earlier, the

---

1. Defendant's Supplemental Memorandum was originally filed on July 6, 2005 (Doc. No. 16), but was refiled on July 7, 2005 to comply with signature requirements.

2. Taken from the Indictment and motion papers filed in this action.

confidential informant had witnessed an unknown individual in the possession of guns and cocaine at 94 Box Street. A record of the confidential informant's *in camera* testimony before Judge Givens was made and preserved, although the informant's identity has not been revealed.

Based on the confidential informant's statement, Judge Givens, on October 27, 2004, issued a search warrant for Defendant's residence, *i.e.*, the upper apartment of a duplex located at 94 Box Street, Buffalo, New York. Defendant's uncle, Lavane Mason, owns the premises and resides in the lower apartment. The warrant directed the law enforcement officers to confiscate any cocaine or handguns found on the premises. The search warrant was executed on October 27, 2004 by law enforcement officers of the police departments of New York State and the City of Buffalo. Defendant was present during the search of the apartment during which only a small quantity of marijuana was recovered.

The law enforcement officers also searched a milk box located in a common area on the first floor of the dwelling structure and built into the wall with doors on both sides permitting a person delivering milk to open the box from the outside and place a bottle or bottles of milk in the box, which could then be retrieved by the resident from inside the house by opening the inner door of the box. Because the outer door to the milk box was painted shut, the box could not be easily opened from the outside. During the search, State Police Investigator Torres ("Investigator Torres"), recovered from the milk box a Ruger Super Black Hawk, .44 Magnum gun. Upon recovering the firearm, Investigator Torres placed Defendant under arrest and advised Defendant of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1996) (*"Miranda* warnings").

Following Defendant's arrest and administration of the *Miranda* warnings, Investigator Torres asked Defendant who was the owner of the firearm, to which Defendant answered the gun belonged to a friend who had left it there a few nights earlier, explaining that because Defendant had handled the gun, his fingerprints would be on the gun. Defendant refused to further identify the firearm's owner.

Defendant now seeks to suppress the firearm on the basis that Judge Givens's search warrant was issued without probable cause insofar as it is predicated on information that was more than ten days old, and that the search exceeded the scope of the warrant, *i.e.*, extended to the common area milk box. Defendant also seeks to suppress his statements made to Investigator Torres as fruit of an illegal search under the *Wong Sun* doctrine, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## DISCUSSION

Defendant moves to suppress the physical evidence seized from the milk box in the common area outside his residence, as well as statements Defendant made to Investigator Torres following his arrest, arguing that the search warrant was issued without probable cause. Defendant specifically objects that the only information provided in support of the search warrant included Investigator Calloway's Affidavit and the *in camera* testimony of an unidentified confidential informant who claimed to have observed an unknown individual at 94 Box Street in the possession of guns and cocaine ten days prior to the date the warrant was issued. Eoannou Affirmation ¶¶ 56–57; Defendant's Memorandum at 7–8. Apparently, the confidential informant provided no information as to how long the guns and cocaine could be expected to remain at 94 Box Street, nor

whether the observed unknown individual was regularly in possession of guns and cocaine at the premises; instead, Defendant argues, Investigator Calloway's Affidavit is the type of "bare bones" affidavit to which courts have routinely declined to apply the "good faith" exception under *Leon. Id.* ¶ 57; Defendant's Memorandum at 7. As such, Defendant maintains the search warrant issued without probable cause or, alternatively, requests the court conduct an *in camera* review of the minutes of the testimony of the confidential informant on which the Calloway Affidavit is based to determine the validity of the search warrant. Eoannou Affirmation ¶ 58; Defendant's Memorandum at 6–8. As a further alternative, Defendant maintains that the search of the milk box, located in a common area outside the upper apartment at 94 Box Avenue, exceeded the scope of the warrant. Eoannou Affirmation ¶¶ 59–65. Accordingly, Defendant maintains the handgun recovered during the search should be suppressed as the fruit of an illegal search. Defendant further maintains that his statements regarding the ownership of the gun were made in response to being shown the gun found in the milk box and, thus, are also fruit of the illegal search, and should also be suppressed. Eoannou Affirmation ¶¶ 66–68; Defendant's Memorandum at 4–5.

The Government argues in opposition that sufficient facts provided the requisite probable cause to support the issuance of the search warrant by Judge Givens and Defendant has failed to meet his burden of demonstrating some basis on which to call into question the presumption that the search warrant was issued based on probable cause. Government's Response at 8–9. The Government alternatively asserts that even if there was not sufficient probable cause to support the search warrant, the search of Defendant's residence was valid pursuant to the investigating agents' reasonable reliance on the warrant such that the warrant was executed in accordance with the "good faith" exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Government's Response at 9–10. As a further alternative, the Government maintains that Defendant is without standing to object to the search of the milk box even if the search were considered beyond the scope of the warrant. Government's Response at 10–11. The Government further asserts that as the firearm was legitimately and properly discovered either during the execution of a valid search warrant, or during a search executed in accordance with the exclusionary rule's good faith exception, there is no basis for suppressing Defendant's statements made following his arrest as fruit of the poisonous tree. Government's Response at 11.

## 1. Probable Cause

Defendant urges the court to suppress evidence seized from his residence and the milk box because the search warrant issued without probably cause, specifically, that the search warrant application is supported solely by Investigator Calloway's Affidavit and the *in camera* testimony of an unidentified confidential informant before Judge Givens. Eoannou Affirmation ¶¶ 51, 57. According to Defendant, because the confidential informant, on October 27, 2004, testified *in camera* before Judge Givens as to having witnessed an unknown individual in the possession of guns and cocaine at 94 Box Street ten days earlier, but failed to provide any information indicating a reason to believe such contraband would still be at the premises ten days later, or that the individual witnessed at the premises in possession of such contraband was regularly present at Defendant's home, there was an insufficient basis for probable cause supporting the search warrant. Eoannou Affirmation

¶¶ 57–58. As noted, Defendant alternatively argues that the search of the milk box, in which the firearm was found, exceeded the scope of the search warrant and, as such, the firearm should be suppressed from evidence. Eoannou Affirmation ¶¶ 59–65.

The Government argues in opposition to suppression that the court must give substantial deference to the findings of the judicial officer issuing the search warrant and, absent some allegation that the warrant was based on deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof specifically identifying that portion of the warrant affidavit alleged to be false, the search warrant's validity is presumed. Government's Response at 8–9. Alternatively, the Government maintains that even if the search warrant issued without the requisite probable cause, the seized evidence is not excludable because the law enforcement officers who executed the search acted with objectively "good faith" reliance on the warrant's validity. Government's Response at 9–10. The Government further asserts that the search of the milk box did not exceed the scope of the search warrant, given that the milk box is located in a hallway accessible by both the lower and upper apartments at 94 Box Street and, furthermore, that Defendant had no subjective expectation of privacy in the milk box. Government's Response at 10.

Defendant argues in further support of suppression that should the court decide that the search warrant was not supported by probable cause, the court should, before determining whether the good faith exception to the search warrant requirement applies in the instant case, conduct a full analysis, including a review of the minutes of the *in camera* hearing held before Judge Givens in connection with the search warrant application, to determine whether the warrant is supported by "knowing falsity," is a "mere rubber stamp" for law enforcement, or whether there exists a "substantial basis" for the issuance of the search warrant. Defendant's Supplemental Memorandum at 6–7. Defendant maintains such review is necessary because Investigator Calloway's Affidavit is a "bare bones" affidavit, failing to provide any information regarding the confidential informant or what the confidential information told both Calloway and Judge Givens. Defendant's Supplemental Memorandum at 7–8.

The Government opposes a review of the *in camera* testimony minutes on the basis that even if it is ultimately determined that there was insufficient probable cause to support issuance of the search warrant, the absence of probable cause has no bearing on whether the law enforcement officers nevertheless executed the search warrant in good faith that it was properly supported by probable cause. Government's Supplemental Memorandum at 4–6.

It is basic that the Fourth Amendment protects the rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 1191, 131 L.Ed.2d 34 (1995). This right "shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched or the thing to be seized." U.S. Const. Fourth Amend.

In determining whether probable cause for a search warrant exists, the issuing judicial officer is simply to make a practical common sense decision whether, given the "totality of the circumstances" set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An issuing judge's determination of probable cause will be upheld if he had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates,* 462 U.S. at 236. An affidavit in support of an application for a search warrant demonstrates a proper showing of probable cause when it sets forth facts which are sufficient to induce a reasonably prudent person to believe that a search of the areas described within the warrant will uncover evidence of a crime. *Berger v. New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

■■■■ Significantly, a judge's determination of probable cause should be given great deference by a reviewing court. *Gates,* 462 U.S. at 236; *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993); *United States v. Nichols,* 912 F.2d 598, 602 (2d Cir.1990). A court reviewing the validity of a search warrant is obligated "simply to ensure that the magistrate had a 'substantial basis' for ... conclud[ing] that probable cause existed." ' *Gates, supra,* at 238–39 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). The resolution of marginal cases should be determined with regard to the preference accorded to warrants. *Jones, supra,* at 270. *See United States v. Rosa,* 11 F.3d 315, 326 (2d Cir. 1993) ("A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.' ") (quoting *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983)). In assessing a probable cause determination, "[t]he only questions for the Court are whether the [affiant's] reliance on that informant was reasonable, and whether the

Magistrate [*sic* ] was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant." *Smith, supra,* at 1013.

■■■ In the instant case, the search warrant application, which includes Investigator Calloway's Affidavit ("the Search Warrant Application")[3] describes how Investigator Calloway brought a confidential informant before Judge Givens, identified the informant to Judge Givens and the informant testified under oath as his or her personal knowledge of the persons, places and things for which the search warrant was sought. Search Warrant Application at 2. According to Investigator Calloway, the confidential informant reported having been present in the upper apartment at 94 Box Street the previous day, an apartment the informant knew to be utilized by "Yaro," and observed an unidentified black male, six feet tall, well built and 27 to 29 years old, with short black hair and brown eyes in possession of more than one kilogram of cocaine and several black automatic handguns. Search Warrant Application at 2. Investigator Calloway provides as corroborating evidence that a utilities check of the upper apartment at 94 Box Street shows that the apartment's utilities have been registered to Yaro M. Barnes, date of birth August 27, 2974, since January 22, 2004. *Id.* A criminal history check revealed that Yaro M. Barnes has prior arrests for weapons possession, criminal sale of a controlled substance and possession charges. *Id.* This information provided an ample basis for Judge Givens to issue a search warrant for Defendant's apartment.

■■■ Moreover, "to prevail on a contention that a search warrant was issued on

---

3. A copy of the Search Warrant Application is attached as an exhibit to the Government's Supplemental Memorandum.

the basis of false information, a defendant must show that the false statements were made knowingly and intentionally, or with reckless disregard for the truth, and that they were necessary to the finding of probable cause." *Rosa, supra,* at 326 (citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Orozco–Prada,* 732 F.2d 1076, 1089 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); and *United States v. Barnes,* 604 F.2d 121, 151–53 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980)). In the instant case, Defendant has made no such showing.

For example, Defendant concedes that an informant did appear before Judge Givens. In particular, Defendant does not contest that the informant advised Judge Givens as to having personally been present in Defendant's apartment and, while there, observed an unidentified, well built black male, between 27 and 29 years old, with short black hair and brown eyes in possession of more than a kilogram of cocaine and several automatic handguns. The information the informant told Judge Givens provided probable cause, *i.e.,* the information would cause a reasonable person to believe weapons and drugs would be found in Defendant's apartment. Furthermore, Judge Givens's determination that the informant's information was credible was based on Judge Givens's personal observation of the informant who appeared before her.

Accordingly, Defendant's motion to suppress evidence seized pursuant to the search of his residence on the basis that the search warrant authorizing the search was issued without probable cause should be DENIED.

## 2. Good Faith Exception

■ Alternatively, should the District Judge find that the search warrant was issued despite a lack of probable cause, then the court should find that the search warrant nevertheless was executed in good faith such that the evidence seized need not be suppressed. "[T]he good faith exception avoids the invalidation of a search conducted pursuant to a defective search warrant and the consequent exclusion of evidence gained thereby." *United States v. Singh,* 390 F.3d 168, 183 (2d Cir.2004) (citing *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405 (1984)). In particular, the exclusionary rule barring illegally obtained evidence does not apply to evidence seized in "objectively reasonable" reliance on a warrant issued by a detached and neutral magistrate, even where the warrant is subsequently deemed invalid. *Leon, supra,* at 926, 104 S.Ct. 3405. "The test of objective good faith is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Moore,* 968 F.2d 216, 222 (2d Cir.1992) (quoting *Leon, supra,* at 922 n. 23, 104 S.Ct. 3405).

■ The good faith exception, however, does not apply in certain situations, including (1) where the issuing magistrate has been knowingly misled; (2) where the judicial role was wholly abandoned by the issuing magistrate; (3) where the search warrant application is so lacking in indicia of probable cause as to render reliance on it unreasonable; and (4) where the warrant is so facially deficient that the executing agent's reliance on it is unreasonable. *Leon, supra,* at 923, 104 S.Ct. 3405. Here, Defendant characterizes Investigator Calloway's Affidavit submitted in support of the search warrant application as a "bare bones" affidavit, providing no information about the confidential informant and little information as to what the informant told Calloway and Judge Givens. Defendant's Supplemental Memorandum at 7. As such,

Defendant maintains that it is impossible to determine from the face of the warrant application whether any of the situations in which the good faith exception does not apply existed. *Id.* at 7–8. Defendant maintains the court must either review the minutes of *the in camera* hearing before Judge Givens, or conduct a hearing to determine whether any of the circumstances under which the good faith exception does not apply existed. The court does not agree.

■ Even assuming, *arguendo,* that the warrant application failed to establish the requisite probable cause to search, the evidence seized as a result of the execution of the warrant should be admitted because the agents relied in good faith on the warrant and Defendant fails to demonstrate otherwise. Specifically, there is nothing to suggest that Investigator Calloway recklessly or deliberately misled the court in the warrant application. Nor does anything in the record suggest that the circumstances under which the search warrant issued is akin to any of the four situations in which the Supreme Court has held the good faith exception inapplicable. *See Leon, supra,* at 923, 104 S.Ct. 3405. Defendant, as noted, does not contest an informant did appear before Judge Givens. Defendant's argument, accordingly, reduces itself to a request that this court "second-guess" Judge Givens's judgment. Such argument is, however, defeated by *Illinois v. Gates, supra,* and its progeny.

Furthermore, there is no need for the court to review the minutes of the *in camera* hearing before Judge Givens or to conduct a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks,*

> if a search warrant contains a false statement or omission, and the defendant makes a substantial preliminary showing (1) that the false statement or omission was knowingly and intentionally, or with reckless disregard for the truth, included by the government in a search warrant affidavit, (2) that the information was material, and (3) that the affidavit's remaining content is insufficient to establish probable cause, then the fruits of the search must be suppressed.

*United States v. Bianco,* 998 F.2d 1112, 1125 (2d Cir.1993) (citing *Franks, supra,* at 155–56), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1644, 128 L.Ed.2d 364 (1994).

[10] Specifically, "[a] defendant is entitled to a *Franks* hearing upon a 'substantial preliminary showing' that the affiant 'knowingly and intentionally, or with reckless disregard for the truth,' included in the affidavit a false statement *necessary to the finding of probable cause.*" *United States v. Millar,* 79 F.3d 338, 342 (2d Cir.1996) (italics added) (quoting *Franks, supra,* at 155–56).

■ Before a defendant is entitled to a hearing to test the truthfulness of a warrant's underlying affidavit, however, the "defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir.1998) (citing *United States v. Levasseur,* 816 F.2d 37, 43 (2d Cir. 1987)). Although an affidavit in support of a search warrant application may contain both lawful and tainted allegations, a search warrant issued on the basis of such affidavit remains valid if probable cause is found based on an independent consideration of only the lawful information contained in the affidavit. *Franks, supra,* at 170–71; *United States v. Ferguson,* 758 F.2d 843, 849 (2d Cir.), *cert. denied,* 474

U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985).

■ "Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the [movant] must make specific allegations accompanied by an offer of proof." *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994) (citing *Franks, supra,* at 171). Furthermore, "[a]llegations that amount to negligence or innocent mistake do not constitute the required showing. The focus is not on whether a mistake was made, but rather on the intention behind the mistake." *United States v. Markey,* 131 F.Supp.2d 316, 324 (D.Conn. 2001).

■ Here, the record establishes that the confidential informant was identified to Judge Givens and testified under oath as to the activity the informant personally observed in the upper apartment at 94 Box Street, including the presence of a black male in the possession of several firearms and cocaine. Investigator Calloway's investigation into the matter revealed that the utilities to the subject apartment were registered in the name of Defendant who, according to a criminal records check, had two prior felony convictions involving firearms and narcotics possession and, as such, was not permitted to possess firearms. The results of Calloway's investigation corroborated the confidential informant's statement that the apartment was "utilized by 'Yaro.'" Search Warrant Application at 2. Moreover, as discussed, Judge Givens had the opportunity to observe both the confidential informant and Investigator Calloway and determine that the information was credible.

The record is devoid of any basis suggesting the presence of any of the circumstances in which *Leon's* good faith exception does not apply, and Defendant fails to identify any such basis. There is, therefore, no basis for a *Franks* hearing.

As such, the good faith exception to the exclusionary rule would apply and Defendant's motion to suppress on this alternative basis should be DENIED without a *Franks* hearing.

### 3. Scope of the Search Warrant

Defendant argues that because the search warrant authorized a search of only the upper apartment of the premises located at 94 Box Street in Buffalo, the search of the milk box located in a common hallway on the first floor of the premises exceeded the scope of the warrant. Eoannou Affirmation ¶ 59. Defendant further maintains he had a legitimate expectation of privacy in the mail box so as to confer standing to challenge the search of the milk box because although Defendant resides in the upper apartment at the premises, his uncle, Lavane Mason, owns the dwelling and resides in the lower apartment. Eoannou Affirmation ¶¶ 60–62. According to Defendant, although the milk box is built into the wall of the lower apartment and originally was accessible by doors located on both sides of the milk box, including one door accessible from the common hallway, as well as from the other door accessible from inside the lower apartment, Defendant sealed the front door of the milk box by painting over it and removing the latch from the outer door of the box because he did not want anyone to have access to the inside of his home through the milk box. *Id.* ¶¶ 62–63. As a result, the milk box could be accessed only from inside the lower apartment. *Id.* ¶ 64.

The Government argues in opposition that because the milk box was only accessible from inside the lower apartment at 94 Box Street, Defendant is without standing to challenge the search of the milk box. Government's Response at 10. Alternatively, the Government maintains that the

milk box was located in a hallway common to both the lower and upper apartments at 94 Box Street and, as such, the search of the milk box was within the scope of the warrant. *Id.*

"Fourth Amendment rights are personal, and may be enforced only by persons whose *own* protection under the Amendment has been violated." *United States v. Fields,* 113 F.3d 313, 320 (2d Cir.1997) (citing *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)) (italics in original). "To contest the validity of a search, a defendant must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." *Fields, supra,* at 320 (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)) (italics in original). Further, "[a] defendant lacks 'standing' in the Fourth Amendment context when his contacts with the search premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable." *Fields, supra* (citing *Rakas, supra,* at 137–38).

In the instant case, the court observes that if the milk box is not considered part of the common hallway providing access to both the lower and upper apartments at 94 Box Street, then Defendant is without standing to challenge the search. That Defendant's uncle, *i.e.,* the owner of the dwelling structure and occupant of the lower apartment at 94 Box Street, and that Defendant painted shut the milk box door facing the common hallway further demonstrates that the milk box was not considered by Defendant as part of the common hallway. Nevertheless, the record also fails to provide any basis supporting a subjective belief by Defendant that he possessed a legitimate expectation of privacy in the milk box.

Specifically, the Second Circuit has held that "[a]lthough the extent of a defendant's property or possessory interest in the place searched is a factor generally considered in determining the reasonableness of a defendant's expectation of privacy, a defendant's lack of such interest does not rule out the possibility that he may still show a reasonable expectation of privacy." *Fields, supra,* at 320 (citing cases). Further, while a defendant's residence in the place searched will generally support a legitimate expectation of privacy in such place, a defendant "may also have a 'sufficient interest in a place other than his own home so that the Fourth Amendment protects him.'" *Fields, supra* (quoting *Rakas, supra,* at 142). Circumstances supporting a defendant's claim to a legitimate expectation of privacy to an apartment in which the defendant does not reside include the defendant being given permission to use the apartment, the defendant's possession of a key to the apartment, and the defendant's use of the apartment in the owner's absence. *Fields, supra,* at 320. A legitimate expectation of privacy has been recognized with regard to an overnight guest who "has at best a fleeting connection to his host's home." *Id.* (citing *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)).

In *Fields, supra,* the Second Circuit considered whether two defendants had standing to challenge the warrantless search of an apartment in which one of the defendants had been given permission by the apartment's lawful tenant to conduct cocaine trafficking operations. The court held that one of the defendants had standing to challenge the search because the defendant has received a key from the tenant, was able to come and go as he pleased, even when the tenant was absent, could bring guests to the apartment, paid the tenant a weekly fee for the privilege of

using the apartment, and had used the apartment several times a week over the course of five months, to cook and cut crack cocaine, for a total of 40 to 50 times. *Fields, supra,* at 320–21. That the defendant did not sleep in the apartment, and used the apartment only for activities of an illegal nature did not render the defendant's expectation of privacy in the apartment unreasonable. *Id.* In contrast, the second defendant who frequently accompanied the first defendant to the apartment and assisted in the cocaine trafficking operations was found not to have a reasonable expectation of privacy in the apartment so as to confer standing because the second defendant was not given a key to the apartment and did not pay the tenant for use of the apartment; rather, the second defendant was present in the apartment solely as the first defendant's guest. *Id.* at 321.

■ Similarly, in the instant case, Defendant presents no evidence supporting a subjectively reasonable expectation of privacy to the milk box. There is no indication that Defendant possessed a key to his uncle lower apartment, which is significant given that upon painting the milk box shut, it was accessible only from inside the lower apartment. Nor is there any indication that Defendant provided his uncle with anything so as to compensate the uncle for use of and access to the milk box, that Defendant was permitted to access the milk box as he pleased, or that Defendant treated the milk box as part of his private residential space. Moreover, although Defendant and his uncle are, presumably, related, and share living quarters that are physically located within the same dwelling structure, nothing in the record suggests that when Defendant was inside his uncle's apartment, Defendant was present as anything other than a guest which is insufficient to confer standing. *Fields, supra,* at 321.

■ Alternatively, the milk box's location in a common area renders Defendant without a legitimate expectation of privacy given that "it is the established law of this Circuit that common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors." *United States v. Holland,* 755 F.2d 253, 255 (2d Cir.1985) (citing cases and stating that the Fourth Amendment's expectation of privacy is violated "only if the place is one that the defendant has the right to keep private and subject to his exclusive control."). *See also United States v. Barrios–Moriera,* 872 F.2d 12, 14–15 (2d Cir. 1989) (holding warrantless arrest within common hallway of multi-tenant building did not violate Fourth Amendment even though the area was guarded by a locked door). That the common area is not accessible to the public at large, nor regularly utilized by a sizeable number of people is irrelevant to the determination that "a common area is beyond an individual's protected zone of privacy." *Holland, supra,* at 255. Accordingly, if the milk box is considered part of the common area of the dwelling at 94 Box Street, then no search warrant was required to search it. As Defendant has failed to assert any facts, through counsel, which, if believed, would demonstrate otherwise, no hearing is required on this issue.

Defendant's motion to suppress physical evidence seized as a result of the search of the milk box as outside the scope of the search warrant should be DENIED.

### 4. Suppression of Statements

Defendant seeks to suppress statements he made to Investigator Torres subsequent to his arrest and being given the *Miranda* warnings on the basis that his arrest and statements resulted from the alleged illegal search. Eoannou Affirma-

tion ¶¶ 66–68. As such, Defendant maintains such statements should be suppressed as "fruit of the poisonous tree." Defendant's Supplemental Memorandum at 3 (citing cases). The Government maintains that because the firearm was not discovered during an illegal search, there is no merit to Defendant's request to suppress the statements as fruit of an illegal search. Government's Supplemental Memorandum at 1–2. Alternatively, the Government asserts that if the firearm and ammunition are determined to have been discovered during an illegal search and, thus, suppressed from evidence, then the Government would have insufficient evidence on which to proceed to trial. *Id.* at 2.

■ The Supreme Court has held that verbal evidence indirectly obtained through a Fourth Amendment violation may be excluded from evidence as "fruit of the poisonous tree." *Wong Sun, supra,* at 487–88. However, as the court is recommending that the search of the milk box in which the firearm and ammunition were discovered was not illegal, there is no basis on which to suppress Defendant's statements to the law enforcement officers, made after having been given the *Miranda* warnings, under the "fruit of the poisonous tree" doctrine. Accordingly, Defendant's motion, insofar as he seeks to suppress such statements, should be DENIED.

### CONCLUSION

Based on the foregoing, Defendant's motion to suppress evidence (Doc. No. 13) should be DENIED without a hearing.