661 A.2d 881

COMMONWEALTH of Pennsylvania, Appellant,

v.

Alfred EVANS, Appellee.

Superior Court of Pennsylvania.

Argued April 18, 1995.

Filed June 27, 1995.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.

David M. McGlaughlin, Philadelphia, for appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

WIEAND, Judge:

This is an appeal by the Commonwealth from an order suppressing marijuana found in and removed from a vehicle being driven by Alfred Evans. The suppression order was entered by the Municipal Court of Philadelphia, and the Court

of Common Pleas denied certiorari. It is from this order that the present appeal was taken.[1]

"Where a motion to suppress physical evidence has been filed, '[t]he Commonwealth [has] the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights.' The Commonwealth is required to establish the admissibility of the challenged evidence by a preponderance of the evidence." *Commonwealth v. Govens,* 429 Pa.Super. 464, 472, 632 A.2d 1316, 1320 (1993) (en banc), quoting Pa. R.Crim.P. 323(h). See also: *Commonwealth v. DeWitt,* 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992); *Commonwealth v. Frombach,* 420 Pa.Super. 498, 500, 617 A.2d 15, 16 (1992). In reviewing an appeal by the Commonwealth from an order suppressing evidence,

> we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983). Furthermore, our scope of appellate review is limited primarily to questions of law. *See Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211 (1986). We are bound by the suppression court's findings of fact if those findings are supported by the record. *Id.* Factual findings wholly lacking in evidence, however, may be rejected. *Id.*

*Commonwealth v. Stine,* 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988). See also: *Commonwealth v. Lagana,* 517 Pa. 371, 375–376, 537 A.2d 1351, 1353–1354 (1988); *Commonwealth v. James,* 506 Pa. 526, 532–533, 486 A.2d 376, 379 (1985). "Where the factual findings of the suppression court are supported by the record, we may reverse only if the legal conclusions drawn therefrom are erroneous." *Commonwealth v. Frombach, supra* at 500, 617 A.2d at 17. See also: *Com-*

---

1. The Commonwealth has certified that the suppression order will substantially handicap its prosecution of the case. The appeal, therefore, is properly before this Court. See: *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

*monwealth v. Twyman,* 425 Pa.Super. 198, 202, 624 A.2d 636, 637 (1993); *Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990).

The pertinent facts may be described as follows:

On June 25, 1992, Officer Robert Snyder of the Philadelphia Police Department Highway Patrol Unit was patrolling Interstate 95 (I–95) in the area of Aramingo Avenue and York Street at approximately 6:30 a.m. when he observed appellee operating a vehicle with expired temporary tags. Upon noticing the expired tags the officer shined his spotlight in appellee's back window, put on his dome lights and signaled for appellee to pull into a gas station located off the highway.

Appellee pulled into the gas station lot, proceeded to go around the gas station and headed back onto Aramingo Avenue towards the entrance of I–95. Fearing that appellee was attempting to flee, the officer immediately pulled his vehicle in front of appellee's in order to block his route of travel and ordered appellee to shut off his vehicle. The officer then testified that as he proceeded to get out of his [the officer's] vehicle, appellee quickly exited his vehicle, closed the door and walked towards the back of his car. [Officer Snyder] then approached appellee and asked him to produce some form of identification as well as any paperwork for the car (i.e., title or registration).

After failing to find any identification or paperwork on his person, appellee walked back to his car to see if he could locate them. Officer Snyder testified that as appellee walked towards his vehicle, he kept looking back over his shoulder in the officer's direction. Due to appellee's suspicious behavior, the officer walked up behind appellee as he opened his car door. As appellee opened the car door and proceeded to bend down into the car, the officer noticed an object approximately 3 to 4 inches wide and two inches in height wrapped in plastic, protruding from underneath the driver's seat. Suspecting that the object was narcotics, the officer handcuffed appellee and placed him under arrest.

The officer then retrieved the object and it was later discovered to contain marijuana.

At the conclusion of Officer Snyder's direct testimony and cross-examination by defense counsel, appellee took the stand on his own behalf. The court then heard brief argument before granting the motion to suppress, finding that the officer lacked sufficient probable cause to arrest appellee. Therefore, the subsequent search of appellee's vehicle was illegal and all evidence derived therefrom was suppressed.

Court of Common Pleas Opinion at pp. 2–3.[2]

■■■■ "As a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." *Commonwealth v. Agnew*, 411 Pa.Super. 63, 74, 600 A.2d 1265, 1271 (1991). See also: *Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); *Commonwealth v. McBride*, 391 Pa.Super. 113, 119, 570 A.2d 539, 542 (1990). "A search incident to a lawful arrest is one such exception." *Commonwealth v. Albino*, 438 Pa.Super. 562, 565–66, 652 A.2d 953, 954 (1995). See also: *Commonwealth v. Lewis*, 394 Pa.Super. 403, 407, 576 A.2d 63, 65 (1990); *Commonwealth v. York*, 381 Pa.Super. 55, 61, 552 A.2d 1092, 1094 (1989). "To be constitutionally valid, a warrantless arrest must be supported by probable cause." *Commonwealth v. Anderson*, 360 Pa.Super. 466, 470, 520 A.2d 1184, 1186 (1987). See also: *Commonwealth v. Canning*, 402 Pa.Super. 438, 441–442, 587 A.2d 330, 332 (1991); *Commonwealth v. Merriwether*, 382 Pa.Super. 411, 419, 555 A.2d 906, 910 (1989). Accordingly, " '[w]hen a policeman has made a lawful arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that auto-

**2.** Appellee testified that he was on his way to work and had stopped for gas, when he was confronted suddenly by Officer Snyder. According to appellee, Snyder demanded the keys to his vehicle, and when he refused, the officer placed him in handcuffs, grabbed his keys and searched his vehicle, finding the marijuana in the trunk. However, the suppression court specifically credited the version of events recited in the testimony given by Officer Snyder.

mobile.' " *Commonwealth v. Jones,* 396 Pa.Super. 304, 307, 578 A.2d 527, 529 (1990), quoting *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981) (footnotes omitted). See also: *Commonwealth v. Mickell,* 409 Pa.Super. 595, 606, 598 A.2d 1003, 1009 (1991).

There also exists an exception to the requirement of obtaining a search warrant "for certain automobile searches based on the inherent mobility of vehicles, with the consequent practical problems in obtaining a warrant prior to infringing a legitimate expectation of privacy, and on the 'diminished expectation of privacy which is accorded automobiles because of their open construction, their function, and their subjection to a myriad of state regulations.' " *Commonwealth v. Milyak,* 508 Pa. 2, 7–8, 493 A.2d 1346, 1349 (1985), quoting *Commonwealth v. Timko,* 491 Pa. 32, 38, 417 A.2d 620, 623 (1980). See also: *Commonwealth v. Rodriguez,* 526 Pa. 268, 272, 585 A.2d 988, 990 (1991); *Commonwealth v. Camacho,* 425 Pa.Super. 567, 576, 625 A.2d 1242, 1246–1247 (1993). "Once the requirement of probable cause is satisfied, the exigencies regarding the inherent mobility of a vehicle and inadequate time to obtain a search warrant render a warrantless vehicle search proper even when the accused is in police custody." *Commonwealth v. Elliot,* 416 Pa.Super. 499, 504, 611 A.2d 727, 729 (1992). See also: *Commonwealth v. Baker,* 518 Pa. 145, 149, 541 A.2d 1381, 1383–1384 (1988); *Commonwealth v. Kilgore,* 437 Pa.Super. 491, 496–98, 650 A.2d 462, 465 (1994). Where a vehicle has been stopped for an ordinary traffic offense, however, a warrantless search of the vehicle may only be conducted where police have independent probable cause "to believe that the contents of the automobile offend the law." *Commonwealth v. Germann,* 423 Pa.Super. 393, 398, 621 A.2d 589, 592 (1993). See also: *Commonwealth v. Lewis,* 442 Pa. 98, 101, 275 A.2d 51, 52 (1971); *Commonwealth v. Talley,* 430 Pa.Super. 351, 354–355, 634 A.2d 640, 642 (1993).

"In this Commonwealth, the standard for evaluating whether probable cause exists is the 'totality of the circumstances' test set forth in *Illinois v. Gates,* 462 U.S. 213,

103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)." *Commonwealth v. Rodriguez, supra* at 272, 585 A.2d at 990. See: *Commonwealth v. Baker,* 513 Pa. 23, 26, 518 A.2d 802, 803–804 (1986); *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). "Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Gibson,* 536 Pa. 123, 130, 638 A.2d 203, 206 (1994). See also: *In the Interest of D.W.,* 427 Pa.Super. 629, 632, 629 A.2d 1387, 1388 (1993); *Commonwealth v. Fromal,* 392 Pa.Super. 100, 113, 572 A.2d 711, 717 (1990); *Commonwealth v. Butler,* 354 Pa.Super. 533, 537–538, 512 A.2d 667, 669–670 (1986). In making this determination,

> 'we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial. *Commonwealth v. Devlin,* 221 Pa.Super. 175, 289 A.2d 237 (1972).'

*Commonwealth v. Simmons,* 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), quoting *Commonwealth v. Kazior,* 269 Pa.Super. 518, 524, 410 A.2d 822, 824–825 (1979). See also: *Commonwealth v. Clark,* 430 Pa.Super. 270, 275, 634 A.2d 254, 256 (1993); *Commonwealth v. Frank,* 407 Pa.Super. 500, 505–506, 595 A.2d 1258, 1261 (1991). "It is only the probability, and not a *prima facie* showing, of criminal activity that is the standard of probable cause for a warrantless arrest. Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference." *Commonwealth v. Quiles,* 422 Pa.Super. 153, 167, 619 A.2d 291, 298 (1993) (en banc) (citations omitted). See also: *Com-*

*monwealth v. Malson,* 434 Pa.Super. 155, 160, 642 A.2d 520, 522 (1994); *Commonwealth v. Burnside,* 425 Pa.Super. 425, 430, 625 A.2d 678, 681 (1993). However, mere "[s]uspicion is not a substitute for probable cause as grounds for an arrest or search and seizure." *Commonwealth v. Kelly,* 487 Pa. 174, 178, 409 A.2d 21, 23 (1979). See also: *Commonwealth v. Murray,* 437 Pa. 326, 329, 263 A.2d 886, 888 (1970); *Commonwealth v. Brinkley,* 423 Pa.Super. 289, 293, 620 A.2d 1226, 1228 (1993); *Commonwealth v. Parker,* 422 Pa.Super. 393, 402, 619 A.2d 735, 739 (1993).

In the instant case, it is undisputed that Officer Snyder made a lawful traffic stop of appellee's vehicle upon observing that it had an expired, temporary registration tag. It is also clear that appellee's constitutional rights were not violated when Snyder observed, in plain view, the brick shaped object protruding from under the driver's seat of appellee's vehicle. See: *Commonwealth v. Steinmetz,* 440 Pa.Super. 591, 592, 656 A.2d 527, 528 (1995) ("[A] search is not conducted nor is the Fourth Amendment implicated when a police officer observes the plainly viewable interior of a vehicle."). What is disputed is whether Officer Snyder's observation of the brick shaped object, under the totality of the circumstances presented, gave rise to probable cause to arrest appellee for possessing illegal drugs and to seize the suspected narcotics. The Commonwealth argues that a plastic wrapped brick is a commonly used means of packaging kilo-sized quantities of narcotics, and, when such an object is observed by an experienced police officer, it is tantamount to the officer's viewing the drugs concealed therein.

With respect to his observation of the brick shaped object in appellee's vehicle, Officer Snyder testified at the suppression hearing in the following manner:

Q. Officer, let me ask you this: Why did you associate that package with narcotics?

A. Because I had seen it on numerous occasions of what I would consider kilo, brick type packaging of narcotics.

Q. And approximately how many times in your career, be it [Bureau of Narcotics Investigation] or Highway Patrol, have you seen kilo or brick-size items?

A. I can only estimate. Maybe 50 times or more that I have actually seen either be part of where I have gotten something like that or other officers where I have actually seen kilos.

Q. So, your opinion is what you saw is what?

A. That it was definitely narcotics as soon as I seen that portion of it.

Q. And where were you standing?

THE COURT: Not to interrupt you.

You never described what you saw. Would you please describe what you saw?

THE WITNESS: Yes, Your Honor.

I saw approximately three or four inches of a wrapping with a—there was approximately maybe three or four inches, maybe two inches deep and the width was maybe three or four inches. It was wrapped in a clear plastic, I believe had a yellowish tint to it. Looked like a solid big, what they call a brick. That's what I considered a package of narcotics.

BY MR. PETERSON:

Q. Where were you standing when you first saw this?

A. I was standing right next to the defendant, right next to the driver's door looking in.

Q. Okay.

Was any part of your body in the car at that time?

A. In the car? No.

Q. What did you do next?

A. I took the defendant, pulled him back away from the car door and put him, spread-eagle, on the car, told him he was under arrest. And I handcuffed him, placed him in my police vehicle.

Q. What did you arrest him for?

A. I then retrieved the item and I arrested him for narcotics violations.

MR. PETERSON: Court's indulgence Your Honor?

THE COURT: If I understand you correctly officer what you are telling me is that, based upon your observations of what you described as a brick protruding from under the driver's seat, even though you cannot see through it, but based upon your experience, knowledge and so forth you concluded that was a controlled substance of some kind?

THE WITNESS: That's correct.

THE COURT: Then you physically arrested the defendant before you actually retrieved the items; is that correct?

N.T. October 7, 1993 at pp. 61–64. The suppression court determined that Officer Snyder's testimony had been entirely credible but concluded nonetheless that probable cause had been lacking to arrest appellee or to seize the brick shaped object.

In *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the United States Supreme Court suggested that some containers and packages "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Id.* at 764 n. 13, 99 S.Ct. at 2593 n. 13, 61 L.Ed.2d at 245 n. 13.[3] Subsequently, in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court held that a police officer, who, during a routine driver's license checkpoint, made a lawful plain view observation of the defendant attempting to conceal a green party balloon of a type commonly used to store illegal narcotics, had probable cause to make a warrantless seizure of the balloon.[4] The Supreme Court reasoned as follows:

**3.** *Arkansas v. Sanders* was overruled on other grounds in *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

**4.** The officer had also observed in the glove compartment of the defendant's vehicle several plastic vials, quantities of loose white powder and an open bag of party balloons.

[I]t is plain that Officer Maples possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance. Maples testified that he was aware, both from his participation in previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics. This testimony was corroborated by that of a police department chemist who noted that it was "common" for balloons to be used in packaging narcotics. In addition, Maples was able to observe the contents of the glove compartment of Brown's car, which revealed further suggestions that Brown was engaged in activities that might involve possession of illicit substances. The fact that Maples could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer.

*Texas v. Brown, supra* at 742–743, 103 S.Ct. at 1543–1544, 75 L.Ed.2d at 514 (Opinion Announcing the Judgment of the Court by Rehnquist, J.).

The Superior Court has recognized that "while a particular type of container may have lawful purposes, the circumstances under which a trained narcotics detective views its use may be tantamount to a view of actual contraband." *Commonwealth v. Burnside, supra* at 430, 625 A.2d at 681. Thus, in *Commonwealth v. Mallory*, 418 Pa.Super. 614, 614 A.2d 1174 (1992), probable cause was found for an arrest of the defendant and the seizure of a clear plastic baggie which he had shoved into the waistband of his pants upon observing police arrive on the scene. This had occurred in an area known for drug activity and the defendant had been standing in close proximity to an identified drug dealer. With respect to probable cause to seize the clear plastic baggie, the *Mallory* Court opined:

[W]e do not hesitate in finding that there was probable cause to associate the concealed object with criminal activity, and we believe that the veteran officer (being involved with more than a hundred criminal instances of "narcotics in

plastic bags") was justified in thinking that the object he saw contained drugs. It is the "probability" of criminal activity and not its "certainty" which is the measuring rod against which the totality of the circumstances confronting the police are to be weighed in determining the presence of probable cause to arrest. *Commonwealth v. Fiore*, 281 Pa.Super. 1, 421 A.2d 1116 (1980).

We find that the facts, when viewed in toto, painted a "picture of probable cause" allowing the police to arrest the appellee. To do otherwise would be to take a myopic view of the facts and render a decision totally devoid of common sensical inferences to be drawn by trained police officers with regard to drug activity. We hold that the actions of the police, under the totality of the circumstances, was proper and not violative of either the Pennsylvania or United States Constitutions (Art. 1, Sec. 8; Fourth Amendment, respectively).

*Id.* 418 Pa.Super. at 623, 614 A.2d at 1179.

In *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209 (1984), police had stopped a vehicle because of several Vehicle Code violations. The driver had been observed trying to conceal a handgun, and thus, both driver and passenger were ordered out of the car and searched for weapons. A manilla envelope containing a small amount of "green weed" was found in the driver's pocket. Several similar envelopes were seized from the passenger's jacket pocket and, when opened by police, were found to contain illegal drugs. The passenger argued on appeal that he had been subjected to an unlawful search. In rejecting this argument, the Superior Court reasoned as follows:

The manilla envelopes were observable in appellant's bulging pocket; however, according to the testimony, the drugs themselves were not visible until after the envelopes were extracted from the pocket. The "plain view" doctrine may be employed only if we accept the hypothesis that the manilla envelopes were so linked with the carrying of drugs that the officers' view of the envelopes was tantamount to a view of the drugs themselves. One of the arresting officers

contended that, in his experience, manilla envelopes are most often used to conceal drugs. The officers, therefore, predicated their seizure on the driver's coincidental possession of "green weed" in a similar manilla envelope along with the fact that manilla envelopes are commonly used for drug packaging.

. . . .

Under the circumstances, the officers did not have to turn a blind eye to the incriminating evidence. One arresting officer testified that in his fourteen years as a highway patrolman, he had on approximately 200 occasions come into contact with manilla envelopes used for the purpose of concealing drugs.

. . . .

The envelopes were recognizable as a common drug packaging device, and similar envelopes were found on appellant's companion. We hold, therefore, that the facts available to the police officers and the implications drawn therefrom, consistent with *[Texas v.] Brown*, gave them probable cause for the seizure under the "plain view" doctrine which "authorizes seizure of illegal or evidentiary items observable to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas,* 463 U.S. 765 [771], 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

*Commonwealth v. Chamberlain, supra,* 332 Pa.Super. at 115–118, 480 A.2d at 1213–1214.

A similar holding can be found in *Commonwealth v. Kendrick,* 340 Pa.Super. 563, 490 A.2d 923 (1985). There, police were executing a warrant to search for drugs and were confronted by a man wielding a shotgun. While searching other persons present for weapons, police observed the defendant attempting to conceal in his hand a small black film vial. The vial was seized by police and, when opened, found to

contain heroin. In upholding the search of the vial, the Court reasoned as follows:

> This Court believes that a film vial, a common package for carrying narcotics, is more closely akin to those rare single-purpose containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders,* 442 U.S. 753, 764–765 n. 13, 99 S.Ct. 2586, 2593–2594 n. 13, 61 L.Ed.2d 235 (1979). Admittedly, a film container has other uses and therefore is not purely a "single-purpose" container. However, given the circumstances of this case, we believe that the trained narcotics detective's view of the container was tantamount to a view of the heroin itself. *See Texas v. Brown, supra,* 460 U.S. 730, 103 S.Ct. 1535 (Stevens, J., concurring at 748–50, 103 S.Ct. at 1547). Therefore, we hold that the search of the film vial was lawful.

*Commonwealth v. Kendrick, supra* at 573, 490 A.2d at 928–929. Compare: *Commonwealth v. Kelly, supra,* 487 Pa. 174, 409 A.2d 21 (plain view observation of small pill vial with drugstore label containing aluminum foil packets did not give rise to probable cause to search defendant's vehicle as nature of vial was not "immediately apparent" and police had no other indication of drug related activity); *Commonwealth v. Collini,* 264 Pa.Super. 36, 45–46, 398 A.2d 1044, 1048–1049 (1979) (arrest of defendant and search of his vehicle not supported by probable cause where police officer with little experience or training in the area of drug enforcement mistakenly identified a block of wood inside defendant's car as the controlled substance peyote).

The federal courts have recognized generally that illegal narcotics, especially cocaine, are commonly stored and transported in kilo-sized rectangular or "brick" shaped packages, which are wrapped in plastic and sealed with tape. See: *United States v. Robles,* 37 F.3d 1260, 1264 (7th Cir.1994). See also: *United States v. Prandy–Binett,* 995 F.2d 1069 (D.C.Cir.1993), *rehearing denied,* 5 F.3d 558 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994); *United States v. Moreno,* 897 F.2d 26, 32–33 (2d

Cir.1990), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); *United States v. Barrios–Moriera,* 872 F.2d 12, 17–18 (2d Cir.1989), *cert. denied,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). However, the Seventh Circuit Court of Appeals has stated that "a wrapped brick of cocaine does not necessarily proclaim its contents so unequivocally as to justify a search without a warrant." *United States v. Cardona–Rivera,* 904 F.2d 1149, 1154 (7th Cir.1990). See: 2 W. LaFave, Search and Seizure, § 3.6(b), at 43 (1987) (footnote omitted) ("The observation of a person in possession of a certain kind of envelope or other packaging which on other occasions involving other persons has been found to conceal narcotics does not, standing alone, constitute probable cause."); *United States v. Barrios–Moriera, supra,* 872 F.2d at 17 ("We do not mean to suggest that the mere viewing and evaluation of the package alone constituted probable cause."). But, "if the shape or other characteristics of the container, taken together with the circumstances in which it is seized ..., proclaim its contents unambiguously, there is no need to obtain a warrant." *United States v. Cardona–Rivera, supra,* 904 F.2d at 1155. See also: *United States v. Robles, supra,* 37 F.3d 1260; *United States v. Barrios–Moriera, supra,* 872 F.2d at 17–18.

 After careful review, we conclude that, under the totality of the circumstances with which he was confronted, Officer Snyder had probable cause to arrest appellee and to seize the brick of marijuana which had been partially concealed under the driver's seat of appellee's vehicle. In addition to his plain view observation of the brick shaped object in appellee's vehicle, Officer Snyder could also consider appellee's initial attempt to avoid being stopped, his nervous demeanor illustrated by his repeatedly looking over his shoulder to check the officer's location prior to opening the door of his vehicle to retrieve his identification, and the fact that the brick shaped object was being kept partially concealed under the driver's seat. When these factors are considered through the eyes of an experienced officer, who on at least fifty prior occasions had observed narcotics packed in kilo-sized bricks, and who immediately recognized the object in appellee's vehi-

cle as being such a brick of narcotics, we hold that probable cause existed to justify a warrantless arrest of appellee and a seizure of the container.

The order denying the Commonwealth's petition for writ of certiorari is reversed, and the case is remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is not retained.

HOFFMAN, J., files a Dissenting Opinion.

HOFFMAN, Judge, dissenting:

The resolution of this case as noted by the majority, turns on the distinction between suspicion and probable cause to believe that criminal activity is afoot. In our recent decision in *Benton,* this court stated that an officer's suspicion that criminal activity has occurred is not sufficient to establish probable cause. *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030 (1995). Instead, there must be reasonable and articulable grounds to support the ensuing search or seizure. *Id.* Our holding today directly contravenes this basic tenet to the Fourth Amendment and paves a foundation for random searches by authorities. *Commonwealth v. Collini,* 264 Pa.Super. 36, 398 A.2d 1044 (1979) ("If subjective good faith alone were the test [for probable cause] the protection of the Fourth Amendment would evaporate and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police."). Not only does Officer Snyder's testimony demonstrate that he was unable to ascertain that the object under the driver's seat of appellant car was narcotics, but the circumstances surrounding appellant's arrest were not consistent with drug activity. *Compare Commonwealth v. Mallory,* 418 Pa.Super. 614, 614 A.2d 1174 (1992), *appeal denied* 533 Pa. 632, 621 A.2d 578 (1993) (probable cause found where defendant observed standing next to identified drug dealer, holding clear plastic baggie in an area known for drug activity) *with Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979) (no probable cause where nature of vial was not immediately apparent to police and there was no indication of

drug related activity). In my view, the principles encompassed in the Fourth Amendment and recently reiterated by this court in *Benton* require that we affirm the order of trial court. Accordingly, for the reasons stated above, I must respectfully dissent.