J-A10023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AUGUSTA LAMAR GRIGGS | |
| Appellant | No. 1571 MDA 2014 |

Appeal from the Judgment of Sentence August 28, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007986-2013

BEFORE: GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                           **FILED MAY 04, 2015**

Appellant, Augusta Lamar Griggs, appeals from the August 28, 2014 aggregate judgment of sentence of three days to six months' imprisonment, plus a $1,000.00 fine, imposed after he was found guilty of one count of driving under the influence of a controlled substance (DUI).[1] After careful review, we affirm.

We summarize the relevant factual history of this case as follows. On August 17, 2013, Officer Isaiah Emenheiser of the North York County Regional Police Department was travelling westbound on Route 30 just after 3:00 a.m. and stopped at a red light at the intersection of Route 30 and Toronita Street. N.T., 4/25/14, at 5. Officer Emenheiser observed a gold

_____

[1] 75 Pa.C.S.A. § 3802(d)(1)(i).

vehicle travelling eastbound on Route 30, which "appeared to be travelling at a very high rate of speed." *Id.* at 6.  The posted speed limit for that area is 40 miles per hour (MPH), but the officer estimated that the vehicle was travelling in excess of 60 MPH.  *Id.*  Officer Emenheiser made a U-turn in an effort to catch up to the gold vehicle.  *Id.*  His vehicle had to travel in excess of 80 MPH over the course of one mile in order to catch up with the gold vehicle.  *Id.* at 7.  Officer Emenheiser observed the car pass through the next intersection at Eden Road without diminishing its speed.  *Id.*  The officer caught up to the gold vehicle when it stopped at the following intersection, at Sherman Street.  *Id.* at 8.  He waited for the traffic signal at Sherman Street to turn green before activating his emergency lights and effectuating the traffic stop for driving at unsafe speed.  *Id.*

Appellant stopped his vehicle on the side of the road and, when approached, gave Officer Emenheiser his driver's license.  N.T., 7/14/14, at 13.  Officer Emenheiser detected "a strong odor of an intoxicating beverage about [Appellant's] breath and person."  *Id.*  He also observed that Appellant had "red glassy eyes, and … [Appellant] stated he was coming from a bar in downtown York."  *Id.*  Appellant told Officer Emenheiser that he had one beer.  *Id.*  After instructing Appellant to perform a few field sobriety tests, Officer Emenheiser arrested Appellant for DUI.  *Id.* at 20.  Appellant gave a blood sample, which tested positive for marijuana.  *Id.* at 22.

On November 27, 2013, the Commonwealth filed an information, charging Appellant with various DUI violations. On December 27, 2013, Appellant filed a motion to suppress all evidence obtained as a result of the August 17, 2013 traffic stop. The trial court conducted a suppression hearing on April 25, 2014, at which Officer Emenheiser testified as the Commonwealth's only witness. Appellant did not testify or call any witnesses. On May 16, 2014, the trial court entered an order denying Appellant's motion to suppress. Appellant proceeded to a one-day bench trial on July 14, 2014, at the conclusion of which Appellant was found guilty of one count of DUI of a controlled substance, and the remaining charges were *nolle prossed*. On August 28, 2014, the trial court imposed a sentence of three days to six months' imprisonment, plus a $1,000.00 fine. On September 17, 2014, Appellant filed a timely notice of appeal.[2]

On appeal, Appellant raises the following issue for our review.

> Whether the testimony by an officer of one or more of the enumerated conditions in 75 Pa.C.S. § 3361 is, *ipso facto*, sufficient for probable cause of a violation of the [Motor Vehicle Code] without testimony regarding the actual or potential hazards then existing based on those conditions?

Appellant's Brief at 4.

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

We begin by noting our well-settled standard of review regarding suppression issues.

> [I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Washington*, 63 A.3d 797, 802 (Pa. Super. 2013) (some brackets and citation omitted).

The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8. "While warrantless seizures such as a vehicle stop are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). One such exception is where, "[a] police officer … has **reasonable suspicion** that a violation of the

vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code." *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (emphasis in original), *appeal denied*, 79 A.3d 1096 (Pa. 2013); *accord* 75 Pa.C.S.A. § 6308(b). However, our Supreme Court has held that where the Motor Vehicle Code violation is not investigable, Section 6308(b) does not apply and probable cause is required in order for the stop to be constitutional. *Commonwealth v. Chase*, 960 A.2d 108, 115-116 (Pa. 2008); *accord Commonwealth v. Feczko*, 10 A.3d 1285, 1291-1292 (Pa. Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 327 (Pa. 2011).

> [In order for a non-investigable traffic stop to be constitutional, t]he officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code. Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference.

*Commonwealth v. Enick*, 70 A.3d 843, 846 n.3 (Pa. Super. 2013) (internal quotation marks and citations omitted), *appeal denied*, 85 A.3d 482 (Pa. 2014).[3]

---

[3] As we explain *infra*, the statute at issue here is Section 3361, which is titled "[d]riving vehicle at safe speed". 75 Pa.C.S.A. § 3361. It is unclear what investigatory purpose would be served by a traffic stop for a violation of this section because once the stop has occurred, the alleged unsafe driving has also stopped. Notwithstanding our Supreme Court's decision in
*(Footnote Continued Next Page)*

As noted above, Officer Emenheiser stopped Appellant's vehicle under Section 3361 of the Motor Vehicle Code, which provides as follows.

> **§ 3361. Driving vehicle at safe speed**
>
> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

In **Commonwealth v. Heberling**, 678 A.2d 794 (Pa. Super. 1996), this Court considered whether the Commonwealth presented sufficient

---

*(Footnote Continued)* _____

**Chase**, one decision of this Court subsequently applied a reasonable suspicion standard to Section 3361. **See generally Commonwealth v. Perry**, 982 A.2d 1009, 1010 (Pa. Super. 2009). However, in **Fzecko**, this Court sitting *en banc* called the propriety of **Perry**'s use of reasonable suspicion into question. **Fzecko**, **supra** at 1291 n.2. Although the parties agreed below in the trial court that probable cause was the correct standard, the Commonwealth appears to argue on appeal that the reasonable suspicion standard controls. **Compare**, N.T., 4/25/14, at 26 (agreeing with Appellant that Officer Emenheiser needed probable cause), **with** Commonwealth's Brief at 8-10 (discussing how Officer Emenheiser had reasonable suspicion to stop Appellant's vehicle under Section 3361). Even if there were a conflict still existing, because we conclude that Officer Emenheiser possessed probable cause, we need not resolve said conflict in this case.

evidence to prove beyond a reasonable doubt that Heberling violated Section 3361. This Court succinctly summarized the relevant facts as follows.

On July 9, 1994, a police officer saw [Heberling] travelling "at an extreme rate of speed" in a 45 mile-per-hour zone. [Heberling] was nearing an intersection (approximately one-tenth of a mile down the road) and the crest of a hill (approximately two- to three-tenths of a mile ahead). [Heberling] was stopped before reaching either of these two points and was issued a citation charging a violation of section 3361. Weather conditions were clear and normal. No other traffic was affected nor were any pedestrians at risk.

*Id.* at 794-795. On appeal, Heberling argued that the Commonwealth was required to produce evidence regarding "any 'prevailing conditions' or 'hazards' that made her excessive speed unreasonable." *Id.* at 794. After engaging in statutory construction analysis, this Court reasoned that the Commonwealth had met its burden based on the following.

In the instant case the trial court found that [Heberling] was approaching an intersection and a hill crest at an extreme rate of speed:

In dismissing the [Heberling]'s appeal, this Court notes that the statute requires the operator to have regard for the actual and *potential* hazards then existing. The statute requires the operator to drive at a safe and appropriate speed when approaching … an intersection … when approaching a hill crest … the Court found as a fact in the instant case that the defendant was travelling at an extreme rate of speed while approaching an intersection and hill crest and determined under the requirements of the statute that the Commonwealth has met its burden.

> Trial Court Opinion, 9/27/95, at 9 (emphasis in original). "Approaching a hill crest" and "approaching … an intersection" are "conditions" specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed. When [Heberling] drove at an excessive speed under these conditions, she violated section 3361.

*Id.* at 797.

After careful review of the certified record, we conclude ***Heberling*** is dispositive of the instant case. As noted above, Officer Emenheiser testified that he estimated Appellant's vehicle was travelling in excess of 60 MPH in a 40 MPH zone. N.T., 4/25/14, at 6. This was informed by the fact that he had to travel in excess of 80 MPH over the course of one mile in order to catch up to Appellant's vehicle. *Id.* at 7. Appellant did not produce any evidence to the contrary in the trial court.[4] The testimony also reveals that after the intersection at Sherman Street, there was a hill crest at Toronita Street where Officer Emenheiser first observed Appellant's vehicle traveling at a high rate of speed. *Id.* at 16. There were other hill crests at Loucks Mill Road and Eden Road, both were intersections that Appellant drove through at a high rate of speed, before being stopped by Officer Emenheiser.

---

[4] We note that our Supreme Court has held that when considering a challenge to a trial court's suppression ruling, our review is limited to the suppression hearing record, and "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing." ***In re L.J.***, 79 A.3d 1073, 1080, (Pa. 2013).

*Id.* at 7, 13, 16. As this Court noted in **Heberling**, the Commonwealth can satisfy its burden at trial beyond a reasonable doubt by showing that a driver went through an intersection at a hill crest at a high rate of speed. **Heberling**, **supra**. This Court has held that the Fourth Amendment's textual standard of probable cause is far less demanding than the trial standard of beyond a reasonable doubt. **Commonwealth v. Evans**, 661 A.2d 881, 885 (Pa. Super. 1995) (citation omitted), *affirmed*, 685 A.2d 535 (Pa. 1996). We reject Appellant's argument that a more searching factual inquiry is required.[5] **See** Appellant's Brief at 13 (stating, "[t]here has to be more to an officer's testimony than regurgitating the language of the statute in order to make out probable cause[]"). Because the Commonwealth may satisfy its burden of beyond a reasonable doubt by showing a motorist approached intersections and went over hill crests at a high rate of speed, it logically follows that the Commonwealth may meet its burden to show probable cause by the same evidentiary showing. As a result, Appellant's issue on appeal lacks merit. **See Washington**, **supra**.

Based on the foregoing, we conclude the trial court properly denied Appellant's motion to suppress. Accordingly, the trial court's August 28, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

---

[5] Appellant cites no authority for the proposition that the Fourth Amendment requires such an inquiry.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/4/2015</u>