J-A08025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDREW DAVID SIKORA, JR. | |
| Appellant | No. 1532 EDA 2015 |

Appeal from the Judgment of Sentence April 24, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003780-2014

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED AUGUST 22, 2016**

I agree with my distinguished colleagues that the trial court incorrectly applied the reasonable suspicion standard to assess the validity of the traffic stop.  However, I believe that the officer possessed probable cause to stop Appellant for driving at an unsafe speed.  Since all issues on appeal relate to the validity of the traffic stop, I would therefore affirm judgment of sentence.

I respectfully disagree with my colleague's recitation of the facts.  The trial court's opinion states, "Officer Fusco heard the car's engine rev.  Officer Fusco looked in his side view mirror and saw the car's taillights travelling away from him at a high rate of speed."  Trial Court Opinion, 7/23/15, at 6. Compare these findings to the majority's memorandum, which states:

_____

* Retired Senior Judge assigned to the Superior Court.

J-A08025-16

> Officer Fusco did not testify as to what effect Appellant's surging of the engine had on the **speed** of the vehicle he was driving. At the suppression hearing Officer Fusco only testified to hearing the engine surge and seeing Appellant's taillights pulling away, and without any support, he made the conclusory statement that Appellant was traveling away from him at a high rate of speed. N.T., 3/10/15, at 9. Officer Fusco saw Appellant's taillights in his side mirror. Officer Fusco merely caught a brief glimpse of the taillights proceeding in the opposite direction. Thus, Appellant's surging of the engine was insufficient to give Officer Fusco probable cause.

Majority's memorandum at 8 (emphasis in original, footnote omitted). This factual recitation is contradicted by the record. Officer Fusco stated he saw the vehicle "go in the opposite direction at a high rate of speed." N.T. Suppression, 3/20/15, at 9. Therefore, the officer did in fact know what happened when Appellant revved the engine: the vehicle suddenly accelerated and reached a high rate of speed. The trial court credited the officer's testimony in its opinion, and, since that finding is clearly supported by the record, we are bound by it.

The majority disagrees with this finding by stating Officer Fusco's testimony is conclusory and lacks support. By way of contradiction, the majority notes that the only evidence of record to establish the vehicle's speed came from Appellant's expert. The trial court found that the Corvette accelerated to fourteen mph, but **only** up to the point "when it went out of view on the MVR video just prior to the acceleration (rev'ing) being heard." Trial Court Opinion, 7/23/15, at 7 (citing N.T. Suppression, 3/20/15, at 62). This finding was based on the expert's opinion that Appellant accelerated

- 2 -

from six mph to fourteen mph as he passed the officer's vehicle. N.T. Suppression, 3/20/15, at 62. That finding obviously says nothing about what speed Appellant reached **after** passing the officer's vehicle, which is when the engine surge occurred. Indeed, the expert conceded that he did not know how fast Appellant went as a result of that acceleration. *Id*. at 61-62. Moreover, the expert based his conclusions on normal, not rapid, acceleration.[1] *Id*. at 64.

Thus, the expert's finding says nothing about what speed Appellant reached upon revving the engine and suddenly accelerating. Therefore, the testimony of the police officer, which the trial court credited, establishes that Appellant proceeded at a high rate of speed.

"Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Tam Thanh Nguyen*, 116 A.3d 657, 663-64 (Pa.Super. 2015) (citations omitted). Clearly, the majority cannot discredit the officer's testimony. Therefore, this finding must be accepted. I take the majority's position to be that the officer's observation of the high rate of speed cannot establish probable

---

[1] The vehicle in question was a Corvette; the record does not indicate year or model, and the report makes no mention of examining the actual engine in question. I do not think it is controversial to state that a Corvette, as a sports car, is generally capable of rapid acceleration.

cause. The majority's criticism is more properly directed to whether Officer Fusco's observation would be sufficient for purposes of proving the violation beyond a reasonable doubt. However, we are not answering that question. "[Probable cause] is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial." ***Commonwealth v. Evans***, 661 A.2d 881, 885 (Pa.Super. 1995) (quoting ***Commonwealth v. Simmons***, 440 A.2d 1228, 1234 (Pa.Super. 1982)). Officer Fusco's testimony, as credited by the fact-finder, is sufficient to establish Appellant accelerated to a high rate of speed for purposes of probable cause. [2]

Analyzing the legal inquiry in light of the facts as found by the trial court, I would hold that probable cause existed to warrant a traffic stop for driving at an unsafe speed. The statute reads:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad

---

[2] I believe the majority places too much emphasis on the officer's inability to accurately estimate the speed Appellant reached after the engine surge. In my view, the officer had probable cause, at minimum, to stop the vehicle and issue a written warning based on the observed conduct. "And, as noted by the trial court, an officer need not stop a vehicle only where he or she intends to issue a citation, but can effectuate a stop solely for purposes of issuing the driver a warning." ***Commonwealth v. Benton***, 655 A.2d 1030, 1033 (Pa.Super. 1995) (citing ***Commonwealth v. Fisher***, 440 A.2d 570, 572 (Pa.Super. 1982)).

grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S. § 3361.

"Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (citation omitted). Whether the facts and circumstances amount to probable cause is a question of law. *Commonwealth v. Newman*, 84 A.3d 1072, 1080 (Pa.Super. 2014). In making this determination, we consider

all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. l.

*Evans*, *supra* at 884-85 (Pa.Super. 1995) (citations omitted).

We set forth in *Commonwealth v. Heberling*, 678 A.2d 794 (Pa.Super. 1996), that the statute in question embodies two general and alternate types of conduct that constitute a violation: (1) driving at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; or (2) driving at a

speed greater than will permit the driver to bring the vehicle to a stop within the assured clear distance ahead. *Id*. at 795. The second category does not apply to these facts. It is also clear that Appellant was not approaching an intersection or railroad grade crossing, a curve, hill crest, nor was he on a narrow or winding roadway. However, the language "when special hazards exist with respect to pedestrians" is part of a catchall category. *Id*.

Herein, I would find Appellant's high rate of speed was neither reasonable nor prudent due to a special hazard existing with respect to pedestrians. Officer Fusco testified that this incident occurred at approximately 2:00 a.m. when businesses in the area were closing and patrons were exiting. Officer Fusco observed several pedestrians in the immediate area. N.T. Suppression, 3/20/15, at 39-40. Officer Fusco testified it was not uncommon for pedestrians to be visibly intoxicated and walking in this area at this time of night. *Id*. at 8.

In my view, that Appellant was traveling at a slow pace when he passed Officer Fusco's vehicle supports the conclusion that Appellant's driving was unsafe for the conditions. Jaywalking pedestrians seeking to cross a street rely on an assumption that approaching vehicles will not suddenly accelerate. Rapid acceleration, as opposed to a gradual build-up of speed, presents far more danger to a pedestrian seeking to cross the street, especially when many of those pedestrians are likely to be impaired and not in full control of their movements. In this regard, Appellant cites

- 6 -

*Commonwealth v. Perry*, 982 A.2d 1009, 1012 (Pa.Super. 2009), for the proposition that a driver has no duty to yield to a pedestrian on a sidewalk. Therein, the trial court specifically found that a driver failed to yield to a pedestrian. *Perry* simply stated that this particular finding was not supported since the record indicated the pedestrian was on the sidewalk, not the crosswalk. *Id*. This does not mean that a court, in assessing whether a hazard existed, cannot consider the presence of pedestrians. Such a reading is flatly contradicted by the plain text of the statute.

Bearing in mind that we are reviewing only whether probable cause justified the stop, I would hold that, under these facts, the officer possessed probable cause to believe that Appellant's sudden acceleration to a high rate of speed in the presence of the pedestrians constituted a violation of the Vehicle Code. While the trial court applied the incorrect standard of reasonable suspicion, we may affirm on any basis. *Commonwealth v. Moser*, 999 A.2d 602, 606, n.5 (Pa.Super. 2010). I would therefore affirm the judgment of sentence.