J-A07041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEROME ANTOINE COPELAND | : | |
| | : | |
| Appellant | : | No. 1250 MDA 2024 |

Appeal from the Judgment of Sentence Entered July 24, 2024
In the Court of Common Pleas of York County
Criminal Division at No:  CP-67-CR-0005203-2022

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED: JUNE 26, 2025**

Appellant, Jerome Antoine Copeland, appeals the judgment of sentence entered by the Court of Common Pleas of York County (suppression court), following a bench trial in which he was found guilty of driving under the influence of alcohol (second offense) (75 Pa.C.S.A. § 3802(b)).  He now argues that the judgment of sentence must be vacated because the suppression court erred in denying his dispositive motion to suppress the evidence obtained by police during the subject traffic stop of Appellant's vehicle.  Specifically, Appellant contends that the arresting officer lacked a lawful basis to justify the stop, and that the suppression court applied an incorrect legal standard when denying the motion.  As the record supports the suppression court's ruling that the stop was lawful, Appellant's claims have no merit, and the order on review must be affirmed.

The suppression court summarized the pertinent facts of the subject traffic stop as follows:

On October 21, 2022, [Appellant] was driving south on North George Street towards East 6th Avenue. Officer Austin Rardain ("the Officer") turned from Route 30 (westbound) onto North George Street and began following [Appellant]. The Officer observed [Appellant] begin to make a U-turn and pulled up behind [Appellant's] vehicle. The Officer claimed that the stop was effectuated because [Appellant] had started to make a U-turn and then stopped when the Officer pulled up behind him. There is no sign forbidding U-turns at the intersection. [Appellant] stopped briefly during the execution of his turn and blocked the intersection.

\* \* \* \*

After being stopped by the Officer, [Appellant] was subsequently subjected to a field sobriety test and blood draw and cited for careless driving and the moving of a stopped or parked vehicle.

Suppression Court Order and Opinion, 6/5/2023, at 1-2 (footnotes omitted).

Following the traffic stop, Appellant was charged with driving under the influence (75 Pa.C.S.A. § 3802(a)(1)); driving under the influence of alcohol — 2nd offense (75 Pa.C.S.A. § 3802(b)); careless driving (75 Pa.C.S.A. § 3714(a)); and moving a stopped or parked vehicle unsafely (75 Pa.C.S.A. § 3333). Appellant sought to suppress all the evidence obtained by the arresting officer on the ground that the officer's initial observations were insufficient to give him the requisite degree of suspicion that a traffic violation had occurred. *See* Omnibus Pretrial Motion to Suppress Evidence, 3/17/2023, at paras. 5-19.

The suppression court held a hearing at which the arresting officer testified to the above facts, recounting them while a motor vehicle recording of the incident was played in open court. **See** N.T. Suppression Hearing, 4/25/2023, at 3-13. The officer testified that, upon positioning his patrol vehicle behind Appellant's car, he saw Appellant come to a complete stop while making a wide U-turn in the middle of an intersection. **See id**., at 6-7. The officer had to apply the brakes of his own vehicle to avoid a collision. **See id**. Appellant's car was stopped in the road for a few seconds before resuming, at which point the officer pulled Appellant over and noticed signs of his impairment. **See id**., at 7.[1]

Although U-turns were permitted at that intersection, and Appellant made his turn through a green light, the officer believed there was probable cause for a summary traffic offense based on the blocking of the intersection. **See id**., at 13 ("[B]locking the intersection was the actual violation that I observed."). The officer also believed from his training and experience that the wide turn taken by Appellant, and his sudden stop in the intersection, could be indicative of impaired driving. **See id**., at 8-9.

The suppression court denied Appellant's motion, ruling that the arresting officer had lawfully stopped Appellant's vehicle because he had reasonable suspicion that a violation of the Vehicle Code had occurred. **See**

---

[1] Upon pulling Appellant over and walking to his driver's side door, the officer smelled the odor of alcohol from his person, and Appellant admitted that he had just left a bar, where he had consumed three beers. **See** Officer's Affidavit of Probable Cause, 10/25/2022, at 1.

Suppression Court Order and Opinion, 6/5/2023, at 3. At the subsequent bench trial, Appellant was found guilty of driving under the influence of alcohol (second offense). The remaining counts were dismissed upon the agreement of the parties. Appellant was sentenced to six months of restrictive probation. He timely appealed, and in his brief, he now raises two related issues concerning the legality of the traffic stop:

I. Did the suppression court err in denying [Appellant's] Pretrial Omnibus Motion to Suppress the stop and seizure of [Appellant] and his vehicle and all evidence flowing therefrom where:

a. There was no lawful basis, under either probable cause or reasonable suspicion, for police to stop [Appellant's] vehicle?

b. The [suppression] court incorrectly applied the reasonable suspicion standard in finding the traffic stop of [Appellant] lawful?

Appellant's Brief, at 4 (issues re-ordered, suggested answers omitted).

Appellant's first claim is that the suppression court erred in denying his motion to exclude the evidence yielded from the traffic stop because the arresting officer had no lawful basis to detain him for a violation of the Vehicle Code.

On review of the denial of a defendant's motion to suppress, the following standards apply:

[We are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for

the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (quoting *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003)).

"A vehicle stop constitutes a seizure under the Fourth Amendment." *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008) (citing *Whren v. United States*, 517 U.S. 806, 809-810 (1996)). As such, motorists subject to a vehicle stop must be afforded the protections of the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Pennsylvania Constitution, both of which protect individuals from unlawful searches and seizures. *See Chase*, 960 A.2d at 113.

"A police officer has authority to stop a vehicle when he or she has reasonable suspicion that a violation of the [V]ehicle [C]ode has taken place, for the purpose of obtaining necessary information to enforce the provisions of the [C]ode." *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013). "However, if the violation is such that it requires no additional

investigation, the officer must have probable cause to initiate the stop." *Id*. (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010)).

"Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Evans*, 661 A.2d 881, 885 (Pa. Super. 1995). In determining probable cause, courts consider "all the factors and their total effect." *Id*. (internal citations omitted). The court should evaluate probable cause as seen objectively through "the eyes of a trained officer" rather than an average citizen, and analyze probable cause in terms of "the factual and practical considerations of everyday life on which reasonable and prudent [people] act." *Id*. (internal citations omitted). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Id*. at 994 (internal citations omitted).

"Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) ("The Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense.") (citing *Chase*, 960 A.2d at 113). "[A]ny violation of the Motor Vehicle Code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime." *Harris*, 176 A.3d at 1020.

Significantly, where the suppression court has applied an incorrect standard when assessing the legality of a traffic stop, this Court is not bound by such legal conclusions, and the ruling will be upheld if it is supported by the record. *See Commonwealth v. Cartagena*, 63 A.3d 294, 300-01 (Pa. Super. 2013) (*en banc*) (application of the wrong legal standard did not compel reversal of order denying motion to suppress because "the law is well settled that if the record supports the result reached by the suppression court, we may affirm on any ground"); *see also Commonwealth v. Brown*, 64 A.3d 1101, 1108 (Pa. Super. 2013) ("The suppression court erroneously applied the probable cause standard rather than that of reasonable suspicion, but the result is the same.").

In the present case, the initial traffic stop of Appellant was justified by the arresting officer's observations. It is undisputed that, moments after the officer drove his patrol vehicle behind Appellant's car, Appellant came to a complete stop in the middle of an intersection. This sudden stop caused the officer to slow down his own vehicle in order to avoid a collision.

Appellant then resumed driving his vehicle without any apparent difficulty, indicating that the stop was not caused by a mechanical malfunction or Appellant's incapacity. Accordingly, the officer witnessed an apparent violation of section 3364 of the Vehicle Code, which states that, "[e]xcept when reduced speed is necessary for safe operation or in compliance with law, no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic." 75 Pa.C.S.A. § 3364(a).

Appellant has argued that did not visibly violate the Vehicle Code because no traffic was impeded when he stopped his car for a few seconds in an intersection while making a U-turn. We find this argument to be unpersuasive because the arresting officer himself was another motorist who was impeded within the meaning of the statute, prior to the stop. ***See id***.; ***see also*** 75 Pa.C.S.A. § 102 (Vehicle Code definition of "traffic," providing in relevant part that the term refers to "vehicles, streetcars and other conveyances, whether singly or together, using any highway for purposes of travel.").

At the suppression hearing, the officer repeatedly stated that he was directly behind Appellant's car when he suddenly stopped in the intersection:

> [Defense counsel]: Okay. Thank you. There were no cars coming behind him, is that correct, or around him?
>
> [Officer]: **Well, I was behind him**.
>
> [Defense counsel]: I apologize. Other direction, when he made the turn, there was nobody coming towards him; is that correct?
>
> [Officer]: It looks like a car had just past him, but --
>
> [Defense counsel]: Sure.
>
> [Officer]: -- I see headlights a little bit more down, but I'm not a hundred percent up close.
>
> [Defense counsel]: **So no, there's nobody behind him currently when he makes this turn?**
>
> [Officer]: **Except for me, no**.

N.T. Suppression Hearing, 4/25/2023, at 11 (emphasis added).

The officer testified further that his patrol vehicle would have struck the rear of Appellant's car had he not quickly applied his breaks. ***See id***., at 6-7. On these facts, the officer had probable cause that section 3364 of the Vehicle Code had been violated, and the traffic stop was justified at the outset insofar as the officer was merely addressing the violation. ***See Commonwealth v. Vasquez***, Nos. 1123 WDA 2021 & 1124 WDA 2021 at *11-12 (Pa. Super. filed March 13, 2023) (unpublished memorandum).

Appellant's second, related, claim is that he is entitled to relief because the suppression court, in its order and opinion, had referred to the "reasonable suspicion" standard when assessing the legality of the traffic stop. ***See*** Suppression Court Order and Opinion, 6/5/2023, at 1-2. It is true that no further investigation was necessary for the officer to determine that a violation of section 3364 had taken place in his presence, and that the proper test to determine the legality of the traffic stop on that basis[2] was whether the officer had probable cause of a Vehicle Code violation.

However, despite the suppression court's error, the record ultimately supports the denial of Appellant's motion to suppress. As discussed above, the arresting officer was driving his patrol vehicle directly behind Appellant's car when the violation of the Vehicle Code took place, objectively giving the

_____

[2] It appears that Appellant's act of stopping his vehicle in an intersection was charged instead under 75 Pa.C.S.A. § 3333, which prohibits a motorist from moving a stopped vehicle "unless and until the movement can be made with safety." Pulling over Appellant based on a suspected violation of that statute would have likewise required probable cause, as a traffic stop would not have enabled further investigation into whether the violation had been committed.

officer probable cause and thereby justifying a traffic stop. **See** N.T. Suppression Hearing, 4/25/2023, at 11. From there, Appellant's visible signs of intoxication justified the continuation of the stop so that the officer could investigate whether any additional offenses had been committed. Thus, the entirety of the traffic stop was lawful, Appellant's claims have no merit, and the order on review must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/26/2025